**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF INDIANA**

**INDIANAPOLIS DIVISION**

FILED
08/08/2025
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

**CAPTAIN MAURICE MACEWEN**,
Plaintiff,

v.

**AMERICAN AIRLINES, INC.**,
**CAPTAIN TIMOTHY AIREY**,
**CAPTAIN KEITH FIRMIN**, and
**CAPTAIN ADRIENNE WOOLEY**,
Defendants.

Civil Action No. 1:25-cv-01580-TWP-MJD

JURY TRIAL DEMANDED

**COMPLAINT**

Plaintiff Maurice MacEwen, appearing pro se, for his Complaint against Defendants American Airlines, Inc., Captain Timothy Airey, Captain Keith Firmin, and Captain Adrienne Wooley, alleges and states as follows:

## I. INTRODUCTION

This is an action brought under the Americans with Disabilities Act of 1990 (“ADA”), 42 U.S.C. §12101 et seq., and the Indiana Civil Rights Law, IC 22-9-5 et seq., to remedy ongoing disability discrimination and retaliation. Plaintiff, a qualified airline Captain employed by American Airlines, has endured a pattern of retaliatory acts, interference with his federally protected rights, and coercion designed to force the disclosure of confidential medical information. Despite full compliance with FAA medical requirements, Defendants have consistently misrepresented facts to both the FAA and TSA, inflicted reputational harm, and imposed professional hardship on Plaintiff in violation of federal and state law.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution, laws, or treaties of the United States, including the ADA. Supplemental jurisdiction over state law claims is proper under 28 U.S.C. § 1367.
2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiff resides in Fishers, Indiana, and a substantial part of the events or omissions giving rise to the claims occurred in this district.
3. Plaintiff has exhausted all administrative prerequisites to filing this suit. He filed Charge No. 450-2024-06444 and Charge No. 470-2025-02145 with the U.S. Equal Employment Opportunity Commission ("EEOC"). On June 20, 2025, the EEOC issued a Notice of Right to Sue for Charge No. 470-2025-02145 (attached hereto as Exhibit 1). This action is filed within ninety (90) days of receipt of that notice. Plaintiff reserves the right to amend this Complaint to include claims arising from Charge No. 450-2024-06444, which remains pending.

## III. PARTIES

4. Plaintiff Maurice MacEwen is a citizen and resident of Fishers, Indiana. He is a qualified airline Captain employed by American Airlines since 2019.
5. Defendant American Airlines, Inc. is a commercial air carrier headquartered in Fort Worth, Texas, that conducts operations in Indiana and throughout the United States.
6. Defendant Captain Timothy Airey was, at all relevant times, the Director of Flight and Chief Pilot for American Airlines covering the DCA (Washington National) and PHL (Philadelphia) bases. He is sued in both his individual and official capacities.
7. Defendant Captain Adrienne Wooley now holds the role previously held by Captain Airey, serving as Director of Flight and Chief Pilot for the DCA and PHL bases. She is sued in both her individual and official capacities.
8. Defendant Captain Keith Firmin was, at all relevant times, Plaintiff's assigned Chief Pilot at DCA. He is sued in both his individual and official capacities.

## IV. FACTUAL ALLEGATIONS

9. Plaintiff Maurice MacEwen is a qualified airline captain and professional pilot who began his career in 2007. He has been employed by American Airlines, Inc. since 2019 and is currently based at Washington National Airport (DCA), where he remains an active line pilot.

10. In 2017, while employed at PSA Airlines—a wholly owned subsidiary of American Airlines—Plaintiff self-disclosed a history of alcohol use and voluntarily entered the FAA's Human Intervention Motivation Study (HIMS) program.

11. Upon entry into the HIMS program, Plaintiff was formally diagnosed with Substance Use Disorder (SUD) as a prerequisite for participation and Special Issuance medical certification. The diagnosis was medically appropriate, as Plaintiff exhibited clinical symptoms at the time of entry.

12. Plaintiff participated fully and in good faith in the HIMS program for over six years, completing hundreds of drug and alcohol tests and attending hundreds of peer meetings. All test results were negative, and Plaintiff remained in full compliance throughout this time. He successfully completed all required elements of the FAA's Special Issuance (SI) monitoring and maintained an active First-Class Medical Certificate without incident for several years.

13. In the summer of 2021, Plaintiff applied to the Federal Flight Deck Officer (FFDO) program, which allows certified airline pilots to receive law enforcement training and carry firearms to protect the flight deck.

14. On February 23, 2023, Plaintiff was formally denied entry into the FFDO program. He later discovered through a FOIA request, fulfilled on February 15, 2024, that then–Chief Pilot Captain Keith Firmin—who had served as Plaintiff's DCA chief pilot since the beginning of his employment with American Airlines—had submitted false information to the Transportation Security Administration (TSA), stating that Plaintiff had been subject to discipline, when in fact, no such disciplinary action had occurred. Captain Firmin served in that role until approximately six months before the time of filing.

15. After discovering the false information through FOIA, Plaintiff requested a copy of his employment file from the DCA base administration in early 2024. This request led to a follow-up meeting with Captain Timothy Airey, Director of Flight and direct supervisor of the DCA and Philadelphia chief pilots, who had recently assumed oversight of Plaintiff's case.

16. During that meeting, Captain Airey reviewed Plaintiff's personnel file in Plaintiff's presence and did not identify any disciplinary entries. Following the meeting, Plaintiff requested a written summary of the discussion. In response, Captain Airey confirmed via email that they had reviewed Plaintiff's personnel file and that there was "nothing remarkable" in it—indicating that no disciplinary action had ever been taken. Plaintiff retains a copy of that email and will provide it as needed.

17. At Plaintiff's next monthly meeting with Captain Airey, he informed Airey that this confirmation directly contradicted the FOIA records showing that Captain Firmin had falsely claimed Plaintiff had been disciplined. Captain Airey's only response was, "I can't speak for Keith."

18. In the same FFDO records, Plaintiff discovered that Captain Firmin disclosed confidential medical information regarding Plaintiff's history of SUD to the TSA without consent, which Plaintiff alleges was a violation of his rights under the Americans with Disabilities Act (ADA) and the Air Carrier Access Act (ACAA).

19. In November 2023, Plaintiff elected to exit the company-run HIMS program and transition to direct compliance with his FAA-issued Special Issuance (SI). Plaintiff's participation in the airline's internal HIMS program had always been voluntary and was undertaken when he first sought help for his disability. At no point did the SI require participation in the company's monitoring system. The FAA issued an updated SI confirming Plaintiff's ongoing fitness to fly and authorizing continued operation under medical oversight. However, the SI itself did mandate that Plaintiff meet monthly with a chief pilot.

20. Following the transition, Captain Timothy Airey took the reins and unilaterally assumed oversight of Plaintiff's SI compliance. Captain Airey informed Plaintiff that, moving forward, he would be required to meet each month with either Airey or Captain Adrienne Wooley in Philadelphia (PHL), despite Plaintiff being based in Washington, D.C. (DCA). When Plaintiff inquired about the reason for the reassignment, Captain Airey simply stated, "That's the way we do it here." No FAA regulation required this change in location.

21. Plaintiff was assigned to meet monthly with a chief pilot located in PHL, and Captain Airey imposed a rigid requirement that meetings occur only during the second week of each month, offering no flexibility for rescheduling.

22. Plaintiff made every reasonable effort to comply with the imposed restrictions, including using personal time and travel accommodations to attend meetings in PHL.

23. In April 2024, Plaintiff was unable to attend the assigned monthly meeting on a Friday due to last-minute jumpseat unavailability. In an effort to resolve the issue in good faith, Plaintiff voluntarily traveled to PHL on his personal day off the following Monday to meet with Captain Airey. During that brief meeting—lasting approximately 10 minutes—Plaintiff explained that nearly two weeks remained in the month and asked whether the meeting could be rescheduled. Captain Airey refused, stating, "It's already been done," referring to a noncompliance report he had already submitted to Plaintiff's HIMS-AME. He added, "Do not confuse my kindness with weakness," and confirmed the meeting would not count toward SI compliance.

24. Plaintiff later obtained a copy of the report, which spanned over a page and a half and grossly mischaracterized the circumstances surrounding the missed meeting. Several

weeks after the incident, Plaintiff was informed via email that he had, in fact, been eligible for positive space travel for such meetings but had never been advised of this option. Despite learning that Plaintiff had not been at fault and had taken prompt corrective action, Captain Airey made no effort to retract, amend, or clarify the earlier report to the FAA or Plaintiff's HIMS-AME.

25. This was not the only instance in which Captain Airey and Captain Wooley mischaracterized Plaintiff's conduct. On multiple occasions while on scheduled flight duty with multi-hour layovers in Philadelphia (PHL), Plaintiff stopped by the chief pilot office to greet Captain Airey or Captain Wooley. During these visits, Plaintiff politely and respectfully inquired—always with a professional demeanor and a smile—whether they might prefer to conduct that month's required meeting at that time, in order to avoid scheduling conflicts later. Each time, his offer was declined, and Plaintiff accepted the decision without issue. Nonetheless, these encounters were later referenced in communications to Plaintiff's HIMS-AME and appeared in his FAA file, distorted as alleged attempts by Plaintiff to circumvent or alter the terms of his monitoring.

26. Throughout early 2024, Captain Airey and Captain Wooley repeatedly imposed restrictions and expectations beyond what was required by the FAA, including inflexible scheduling, refusals to accommodate meeting locations, and threats of FAA reporting for minor or mischaracterized incidents.

27. Plaintiff had a prior interaction with Captain Airey where, during their first meeting, Airey indicated that he would need to use "tough love" and implied that compliance would be judged subjectively.

28. In a pattern of hostility, American Airlines management, including Captain Airey and Captain Wooley, began to treat Plaintiff as burdensome, despite his perfect testing and compliance record. Plaintiff reasonably believes that certain actions taken against him were coordinated. For example, shortly after Captain Firmin contacted Plaintiff under the pretext of a "wellness check" concerning the use of sick days near holidays, Plaintiff attended his next monthly meeting with Captain Airey. During that meeting, Airey appeared to anticipate the concern and attempted to justify Firmin's actions by stating it was "standard procedure" for management to receive a list of pilots flagged for sick leave usage during holiday periods. However, based on Plaintiff's nearly two decades of professional experience in the airline industry, he had never seen or heard of such a policy being applied in this manner. The sequence of events, the content of the call, and Airey's effort to preemptively excuse Firmin's behavior further reinforced Plaintiff's belief that these actions were coordinated.

29. Separately, Plaintiff experienced targeted scrutiny from Captain Firmin, who contacted Plaintiff under the pretext of investigating sick leave used near holidays, despite Plaintiff having sufficient sick time. This contact was perceived by Plaintiff as retaliatory and unprecedented.

30. Captain Firmin created a PEH (Personnel Event History) entry in Plaintiff's employment file regarding sick days used near holidays. Prior to doing so, Captain Firmin called Plaintiff and informed him that the entry would be logged and that Plaintiff would have the opportunity to submit a rebuttal. Plaintiff submitted a written response, objecting that the entry was unjustified, inconsistent with policy, and appeared retaliatory—particularly in light of his recent EEOC activity and the fact that he had sufficient accrued sick time. Despite Plaintiff's objections, no correction or response was ever provided.

31. Plaintiff alleges that these actions were part of a broader campaign to portray him as noncompliant or unstable, despite clear documentation of full compliance and exemplary conduct.

32. Plaintiff believes these collective actions were taken with the intent to provoke FAA disciplinary action or medical certificate revocation, thereby threatening his career and financial security.

33. In January 2025, the FAA issued an updated SI explicitly removing the requirement for Plaintiff to meet monthly with a chief pilot. Plaintiff informed Defendants of the change and ceased participating in unnecessary meetings.

34. On or about January 30, 2025, despite Plaintiff holding a valid First-Class Medical Certificate and having fully informed Defendants of the updated SI, Captain Wooley demanded that Plaintiff produce a physical copy of his Special Issuance. Plaintiff declined, citing his right to medical privacy.

35. Plaintiff was removed from active flight status pending an internal investigation into his medical certification, pursuant to directives issued by Captain Airey. He was initially placed on paid leave for approximately two weeks, after which Defendants indicated they would reconsider his leave status. The stated reason for the investigation was that Plaintiff had ceased attending monthly meetings with the chief pilot—an action Defendants mistakenly believed violated his FAA-issued Special Issuance (SI). Plaintiff informed Defendants that the FAA had recently updated his SI to eliminate the chief pilot meeting requirement, and that he remained fully qualified, current, and medically cleared to fly. He held a valid First-Class Medical Certificate and was, at all relevant times, an active and authorized airline captain in good standing with the FAA.

36. In an effort to resolve the issue, Plaintiff—through his union-appointed attorney—provided official FAA verification of his current medical and pilot certificates, using procedures outlined in the company's own flight operations manual. Defendants refused to accept the verification. Plaintiff then obtained a letter from Dr. David O'Brien, the FAA official who had personally signed his SI, confirming that Plaintiff's medical certificate remained valid, that he was in good standing, and that the SI no longer required monthly chief pilot meetings. Defendants refused to accept this documentation as well.

37. Throughout the process, Plaintiff repeatedly asserted that it was important to him to maintain his medical privacy, and that disclosing his SI documentation would violate his rights. These objections were repeatedly ignored. Ultimately, the company, through its communication with Plaintiff's union attorney, demanded that Plaintiff physically present his Special Issuance to any chief pilot in the system. Under continued threat of being placed on unpaid leave, Plaintiff was forced to comply.

38. Defendants consistently disregarded Plaintiff's good-faith efforts to comply with FAA medical requirements and failed to respect his medical privacy rights. Their conduct—including misrepresentations to the FAA, unnecessary escalation of routine matters, and false or misleading documentation—caused Plaintiff substantial professional hardship, reputational damage, and ongoing emotional distress.

## V. CAUSES OF ACTION

### Count I — Violation of the Americans with Disabilities Act (42 U.S.C. § 12112)

Defendants discriminated against Plaintiff on the basis of a known disability, imposed conditions not required by the FAA, retaliated for protected activity, and coerced disclosure of confidential medical information, all in violation of the ADA.

### Count II — Retaliation under the ADA (42 U.S.C. § 12203)

Defendants retaliated against Plaintiff after he engaged in protected activity, including filing EEOC charges, refusing to disclose private medical documents, and asserting his rights under the ADA.

### Count III — Interference with ADA Rights (42 U.S.C. § 12203(b))

Defendants interfered with Plaintiff's rights by creating a hostile, coercive, and intimidating environment, including threats of FAA reporting, medical disqualification, and unpaid leave unless Plaintiff relinquished his privacy rights.

### Count IV — Violation of Indiana Disability Discrimination Law (IC 22-9-5)

Defendants violated Indiana's civil rights statute by treating Plaintiff differently on the basis of disability, failing to accommodate updated FAA requirements, and penalizing Plaintiff for exercising legal rights.

### Count V — Intentional Infliction of Emotional Distress (Common Law)

Defendants' conduct was extreme and outrageous, including false reports to federal authorities, coercive demands for protected medical data, and the misuse of company disciplinary processes to inflict harm. This conduct caused severe emotional distress and reputational injury.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and award the following relief:

A A declaratory judgment that Defendants violated Plaintiff's rights under the Americans with Disabilities Act (ADA), the Indiana Civil Rights Law, and other applicable federal and state laws;

B Compensatory damages for lost income, emotional distress, reputational harm, and other non-economic losses in an amount to be determined at trial;

C Punitive damages to deter future misconduct and hold Defendants accountable for their willful and malicious actions;

D An injunction prohibiting further retaliation, coercion, or disability-based discrimination, including policies or practices that compel disclosure of confidential medical information without lawful justification;

E An order requiring Defendants to purge any false or retaliatory entries from Plaintiff's employment records and to notify relevant third parties, including federal agencies, of any prior misstatements;

F An award of attorney's fees and costs, if applicable and allowable by law;

G Any such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Respectfully submitted**,
Dated: August 08, 2025

/s/ Captain Maurice MacEwen
Maurice MacEwen
12842 Drumdow Ln
Fishers, IN 46037

Email: mauricemac7@hotmail.com
Pro Se Plaintiff