**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| CAPTAIN MAURICE MACEWEN,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC., CAPTAIN TIMOTHY AIREY, CAPTAIN KEITH FIRMIN, and CAPTAIN ADRIENNE WOOLEY,<br><br>Defendants. | Case No. 1:25-cv-01580-TWP-MJD<br><br>Judge Tanya Walton Pratt<br><br>Magistrate Judge Mark J. Dinsmore |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Ada W. Dolph
adolph@seyfarth.com
Taylor C. Iaculla, (*admitted pro hac vice*)
tiaculla@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

***Attorneys for Defendants***
***American Airlines,***
***Captain Timothy Airey,***
***Captain Keith Firmin, and***
***Captain Adrienne Wooley***

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. The Collective Bargaining Agreement Between The Allied Pilots Association and American Airlines .......... 2

B. The HIMS Program .......... 3

C. Plaintiff Maurice MacEwen .......... 4

D. Plaintiff's Claims .......... 8

ARGUMENT .......... 8

I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT ALLEGES MINOR DISPUTES OVER WHICH THE COURT HAS NO SUBJECT MATTER JURISDICTION PURSUANT TO THE RAILWAY LABOR ACT .......... 8

A. Legal Standard On A Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction .......... 8

B. Counts I-V Are Precluded By The RLA, Which Preempts Claims That Are "Minor" Disputes .......... 9

II. PLAINTIFF'S CLAIMS BASED ON INDIANA STATE LAW (COUNTS IV AND V) ARE ALSO PREEMPTED BY THE FEDERAL AVIATION ACT (FAA). .......... 14

III. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ANY OF THE INDIVIDUAL DEFENDANTS. .......... 16

A. Legal Standard On A Motion To Dismiss For Lack Of Personal Jurisdiction .......... 16

B. General Jurisdiction is Lacking as to All Individual Defendants .......... 17

C. No Specific Jurisdiction Exists for Any Individual Defendant .......... 18

IV. PLAINTIFF'S COMPLAINT ALSO FAILS TO STATE A CLAIM FOR RELIEF. .......... 19

A. Standard of Review On A Rule 12(b)(6) Motion .......... 19

B. Plaintiff's Federal ADA Claims Should Be Dismissed .................................... 19

1. Plaintiff Failed to Exhaust His Administrative Remedies On Almost All Of The Claims He Brings .................................................. 19

2. Plaintiff's Exhausted ADA Claims Also Fail Because He Is Not Eligible For Relief Under the ADA and Can Establish No Causal Connection Between His Alleged Protected Conduct And The Alleged Retaliation .................................................................. 21

3. The ADA Does Not Permit Individual Liability .................................. 23

C. Plaintiff's Indiana Disability Claims Should Be Dismissed .............................. 24

D. Plaintiff's IIED Claim Should Be Dismissed .................................................. 24

1. The Complaint Fails to Allege Extreme or Outrageous Conduct ............ 24

2. Plaintiff Has Not Alleged the Requisite Intent ..................................... 27

CONCLUSION ........................................................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) .... 19

*Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 19, 25

*Atchison, T. & S. F. Ry. v. United Transp. Union*,
734 F.2d 317 (7th Cir. 1984) .... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 19

*Bhd. of Ry., Airlines & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*,
847 F.2d 403 (7th Cir. 1988) .... 9, 10

*Blackwell v. SkyWest Airlines, Inc.*,
2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) .... 11

*Bradley v. Hall*,
720 N.E.2d 747 (Ind. Ct. App. 1999) .... 25, 27

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
137 S. Ct. 1773 (2017) .... 17

*Brown v. Ill. Central R.R. Co.*,
254 F.3d 654 (7th Cir. 2001) .... 8, 9, 11, 12

*Carlson v. CSX Transp. Inc.*,
2012 WL 1657117 (S.D. Ind. May 10, 2012) .... 23

*Chaidez v. Ford Motor Co.*,
937 F.3d 998 (7th Cir. 2019) .... 21

*Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*,
491 U.S. 299 (1989) .... 2, 9, 13

*Drake v. Laboratory Corp. of Am. Holdings*,
458 F.3d 48 (2nd Cir. 2006) .... 15

*Evers v. Astrue*,
536 F.3d 651 (7th Cir. 2008) ... 8

*George v. Republic Airways*,
2021 WL 1022428 (S.D. Ind. Mar. 17, 2021) ... 27

*Gilstrap v. United Air Lines, Inc.*,
709 F.3d 995 (9th Cir. 2013) ... 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ... 17

*Grant-Overton v. Fort Wayne Urban League, Inc.*,
2021 WL 1549736 (N.D. Ind. Apr. 20, 2021) ... 18

*Harriston v. Chicago Tribune Co.*,
992 F.2d 697 (7th Cir. 1993) ... 26

*Hawaiian Airlines, Inc. v. Norris*,
512 U.S. 246 (1994) ... 9, 11

*Int'l Bhd. of Teamsters v. Republic Airways Inc.*,
127 F.4th 688 (7th Cir. 2025) ... 10, 11

*International Shoe v. Co. v. Washington*,
326 U. S. 310 (1945) ... 17

*Jaros v. Illinois Dep't of Corrections*,
684 F.3d 667 (7th Cir. 2012) ... 23

*Johnson v. CRF First Choice, Inc.*,
2016 WL 5341253 (S.D. Ind. Sept. 22, 2016) ... 24

*Johnson v. Melton Truck Lines, Inc.*,
2016 WL 8711494 (N.D. Ill. Sept. 30, 2016) ... 17

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ... 18

*Leisen v. City of Shelbyville*,
153 F.3d 805 (7th Cir. 1998) ... 22

*Lemaster v. Spartan Tool, LLC*,
2009 WL 700240 (S.D. Ind. Mar. 16, 2009) ... 24, 26

*LinkAmerica Corp. v. Cox*,
857 N.E.2d 961 (Ind. 2006) ... 17

*Matlin v. Spin Master Corp.*,
921 F.3d 701 (7th Cir. 2019) ........ 19

*Miller v. S.W. Airlines, Co.*,
926 F.3d 898 (7th Cir. 2019) ........ 8

*N. Grain Marketing, LLC v. Greving*,
743 F.3d 487 (7th Cir. 2014) ........ 18

*Noel v. HCC Ins. Holdings, Inc.*,
2011 WL 13209658 (W.D. Wis. Sept. 21, 2011) ........ 16

*Perez v. Staples Cont. & Com. LLC*,
31 F.4th 560 (7th Cir. 2022) ........ 4

*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ........ 16

*Rashad v. USF Holland LLC US*,
2025 WL 1939886 (S.D. Ind. July 24, 2024) ........ 23

*Rawlins v. Select Specialty Hosp. of Nw. Ind., Inc.*,
2014 WL 1647182 (N.D. Ill. Apr. 23, 2014) ........ 16

*Robinson v. Lake Minnehaha Owner's Assoc.*,
2012 WL 6197150 (N.D. Ind. Dec. 12, 2012) ........ 26, 27

*Rodrigo v. Carle Found. Hosp.*
879 F.3d 236 (2018) ........ 22

*Rush v. McDonald's Corp.*,
966 F.2d 1104 (7th Cir. 1992) ........ 20

*Schmees v. Hc1.Com, Inc.*,
2020 WL 708037 (S.D. Ind. Jan. 12, 2020) ........ 24

*Secrease v. W. & S. Life Ins. Co.*,
2014 WL 12768454 (S.D. Ind. Dec. 3, 2014) ........ 27

*Sitar v. Ind. Dept. of Transp.*,
344 F.3d 720 (7th Cir. 2003) ........ 20

*Spears v. Sur LA. Table, Inc.*,
2022 WL 1241944 (S.D. Ind. Apr. 4, 2022) ........ 16

*Sturdivant v. Indiana Prot. & Advoc. Servs.*,
2003 WL 26612797 (S.D. Ind. Sept. 26, 2003) ........ 24

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) .......... 16, 18

*Tracy v. Fin. Ins. Mgmt. Corp.*,
458 F. Supp. 2d 734 (S.D. Ind. 2006) .......... 25

*Ventress v. Japan Airlines*,
747 F.3d 716 (9th Cir. 2014) .......... 14, 15

*Woolridge v. Natl. R.R. Passenger Corp.*,
800 F.2d 647 (7th Cir. 1986) .......... 8

*Yeatts v. Zimmer Biomet Holdings, Inc.*,
2017 WL 1375117 (N.D. Ind. Apr. 17, 2017) .......... 25, 26

**Statutes**

42 U.S.C. § 2000e-5(e)(1) .......... 20

42 U.S.C. § 12111(8) .......... 21

42 U.S.C. § 12112(a) .......... 21

42 U.S.C. § 12117(a) .......... 20

49 U.S.C. § 44701(a)(4) .......... 14

49 U.S.C. § 44921 .......... 5

Americans with Disabilities Act .......... *passim*

Arming Pilots Against Terrorism Act .......... 5

Federal Aviation Act .......... *passim*

Homeland Security Act Title XIV (Pub. L. 107-296, Nov. 25, 2003, 116 Stat. 2300) .......... 5

Railway Labor Act .......... *passim*

**Other Authorities**

14 C.F.R. pts. 117, 121 .......... 14

14 C.F.R. § 61.23(A) .......... 22

14 C.F.R. § 61.53(a) .......... 14, 15

14 C.F.R. § 67, Subpart B .......... 14

14 C.F.R. § 67.401 .......................................................................................................... 6, 14

144 C.F.R. § 68.9 .................................................................................................................. 4

Fed. R. Civ. P. 12(b)(1) ........................................................................................................ 1, 8

Fed. R. Civ. P. 12(b)(2) ........................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

HIMS Program, About, https://himsprogram.com/about-hims/..............................................3

Transportation Security Administration, *Federal Flight Deck Officer*, https://www.tsa.gov/for-industry/training/federal-flight-deck-officer (last visited Oct. 16, 2025).................................................................................................. 5

Defendants American Airlines, Inc. ("American"), Captain Timothy Airey ("Airey"), Captain Keith Firmin ("Firmin"), and Captain Adrienne Wooley ("Wooley") (collectively "Defendants"), by and through their attorneys, move to dismiss Plaintiff Maurice MacEwen's Complaint in its entirety and with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6).

## I. INTRODUCTION

Plaintiff's claims are riddled with fatal flaws that simply cannot be cured with any amendment and his Complaint should be dismissed with prejudice.

First, every one of Plaintiff's claims involves interpretation and application of terms of the parties' collective bargaining agreement ("CBA") subject to mandatory and exclusion arbitration under the Railway Labor Act ("RLA"). His claims are therefore preempted by the RLA, divesting this Court of subject matter jurisdiction and mandating dismissal for resolution by the System Board of Adjustment procedures set forth under the RLA.

Second, Plaintiff's Indiana state law claims (Counts IV and V) are similarly preempted by the Federal Aviation Act ("FAA") because they seek to establish new and different safety standards for pilots than are currently in place under the FAA.

Third, with respect to the individual Defendants—Captains Airey, Firmin, and Wooley—none are domiciled in Indiana, nor do they maintain sufficient contacts with the state to support personal jurisdiction. Accordingly, the claims against them must be dismissed.

Fourth, Plaintiff's federal Americans with Disabilities Act claims fail because Plaintiff sues on claims and allegations contained in an EEOC charge for which he has *not* been issued a notice of right to sue—a prerequisite to filing suit under the statute. Moreover, Plaintiff's federal ADA claims fail because he without providing verification of his certification to fly an aircraft, he is not a "qualified" individual eligible for relief under the statute. Moreover, his ADA retaliation claim

fails because the retaliatory conduct he alleges (i.e., requesting a physical copy of his SI) occurred *before* his alleged protected activity and because, as he concedes, American believed he may be violating the FAA—not for any retaliatory reason.

Plaintiff's Indiana disability claim fails because (1) it cannot be brought against individuals, and (2) there is no private right of action under this state law without the express consent of the defendant(s), which has not been given here.

Lastly, Plaintiff's claim for intentional infliction of emotional distress ("IIED") does not plausibly allege conduct that is "extreme and outrageous," or articulate the requisite intent.

For these reasons, Plaintiff's Complaint should be dismissed with prejudice.

## II. BACKGROUND

### A. The Collective Bargaining Agreement Between The Allied Pilots Association and American Airlines[1]

Plaintiff works for American Airlines as a Captain and is based at American's Washington National Airport ("DCA") hub location. (ECF No. 1 ¶¶ 4, 9).

Plaintiff is represented for the purposes of collective bargaining with American Airlines by the Allied Pilots Association ("APA"). (Exhibit 1, Collective Bargaining Agreement Excerpts at 1). The collective bargaining agreement ("CBA") between American Airlines and the APA governs Plaintiff's terms and conditions of employment. (Ex. 1 at III-VI).

The 448-page CBA also contains numerous provisions addressing a pilot's use of sick leave under the CBA. Section 10 of the CBA, titled "Sick Leave," outlines the requirements for pilot use of sick time. (Ex. 1 at § 10-1). In Section 10-4, 7(h), the CBA provides that "[r]egardless of the length of a pilot's absence from work, the Company shall retain the ability to . . . investigate the

---

[1] The airline industry is covered by the RLA and minor disputes, addressed on pages 8-11 *infra*, are resolved by an adjustment board established by the airline and the union. *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 304 n.4 (1989).

possible abuse of sick leave for cause (which includes, but is not limited to, frequency of use, sick leave patterns and sick leave use in conjunction with holidays, vacations or training[)]."

Section 21 of the CBA titled "Discipline, Grievances, Hearings and Appeals," addresses the circumstances under which American may document

> . . . discussion records, which are currently referred to as Personnel Employment History (PEH) entries, would be entered in and will be maintained as a permanent part of a pilot's Company personnel file; however, no advisory or disciplinary letter will refer to any adverse PEH entries in the discussion record entry which was made more than two (2) years prior to the issuance of said advisory or disciplinary letter.

(Ex. 1 at § 21-1(A)(d)). The CBA further explains that PEH entries are "non-disciplinary verbal advisor[ies]." (*Id*. at § 21(1)(A)(g)). Further, the CBA provides that a pilot will be notified each time of a PEH entry, and will be given an opportunity to "provide a written rebuttal which will be attached and become a part of the discussion record." (*Id*. at § 21(1)(A)(e)). The steps under which a pilot may be assessed actual disciplinary action are clearly outlined in the CBA as well. (*See id.* at § 21).

**B. The HIMS Program**

The Human Intervention Motivational Study ("HIMS") program "is an occupational substance abuse treatment program, specific to pilots, that coordinates the identification, treatment, and return to work process for affected aviators. It is an industry-wide effort in which managers, pilots, healthcare professionals, and the FAA work together to preserve careers and enhance air safety."[2]

American, as authorized by the FAA, has its own HIMS program, supporting its pilots in returning to and remaining at work even after a substance dependence issue is identified. (Exhibit 2, The HIMS Handbook, Revision # 5.5, at 5; Exhibit 3, The HIMS Handbook, Revision # 24.0,

[2] *See* HIMS Program, *About*, https://himsprogram.com/about-hims/ (last accessed October 16, 2025).

at 5).[3] Critically, American's HIMS program was negotiated with and mutually agreed upon by the APA. (Ex. 2 at 18) (noting agreement between the APA's President and American's Vice President of Flight); (Ex. 3 at 18) (indicating the same). While participation in the HIMS program is voluntary, once admitted to the program, pilots must obtain a special medical certificate from the FAA, referred to as a "Special Issuance," or "SI," that prescribes individualized compliance requirements that the pilot must meet to maintain his medical certificate and return to flying commercial flights for the airline. (Ex. 2, at 6; Ex. 3, at 6). *See* 144 C.F.R. § 68.9.[4]

These special requirements typically include attending "monthly monitoring meetings at your assigned base or its substitutes" and participating in "weekly group aftercare meetings." (Ex. 2 at 6; Ex. 3 at 6). Following the receipt of a SI, pilots remain obligated to comply with the program's requirements including active participation in meetings and monthly reports to the FAA from the pilot's flight operations supervisor, as specified in the pilot's SI. (Ex. 2, at 7; Ex. 3, at 7).

### C. Plaintiff Maurice MacEwen

Plaintiff is a "citizen and resident of" Fishers, Indiana. (ECF No. 1 ¶¶ 4). In 2017, while employed as a pilot at PSA Airlines (a wholly owned subsidiary of American Airlines Group) he voluntarily disclosed a history of alcohol use and entered an FAA HIMS Program, as required by the FAA to safely return to working as a commercial pilot. (*Id.* ¶ 10).

In 2019, American Airlines hired Plaintiff as a pilot. (*Id.* ¶ 9). Plaintiff initially reported to Captain Timothy Airey, Director of Flight and Chief Pilot for the DCA and Philadelphia, Pennsylvania ("PHL") bases. (*Id.* ¶ 6). Captain Adrienne Wooley succeeded Captain Airey in his

---

[3] American Airlines' HIMS Handbook Revision # 5.5 was in effect from December 21, 2021 through January 31, 2024.

[4] "This [C]ourt can take judicial notice of statutes and regulations." *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 574 n.6 (7th Cir. 2022).

position as Director of Flight and Chief Pilot for the DCA and PHL bases. (*Id.* ¶ 7). Captain Keith Firmin was Plaintiff's DCA-base Chief Pilot. (*Id.* ¶ 8). Plaintiff's SI continued to require him to participate in a HIMS program, and he chose to switch from his initial HIMS Program to American's HIMS program. (*Id.* ¶¶ 10, 12, 19). As part of his six years of participation in American's HIMS program, among other SI requirements, Plaintiff underwent regular drug and alcohol testing, attended peer meetings, and met monthly with a designated American Chief Pilot. (*Id.* ¶¶ 12, 19).

Separate from his employment with American, in the "summer of 2021," Plaintiff applied to the Federal Flight Deck Officer ("FFDO") program.[5] (*Id.* ¶ 13). The FFDO program was created in the wake of 9/11, and "authorizes flight crew members to use firearms to defend against an act of criminal violence and air piracy while attempting to gain control of an aircraft." *See* Arming Pilots Against Terrorism Act (APATA) as Title XIV of the Homeland Security Act (Pub. L. 107-296, Nov. 25, 2003, 116 Stat. 2300), codified at 49 U.S.C. § 44921. On February 23, 2023, Plaintiff was rejected from the program. (*Id.* ¶ 14). Subsequently, Plaintiff made a FOIA request for his FFDO file. (*Id.*). Plaintiff now alleges that in reviewing the file, he determined that Captain Firmin "submitted false information to the Transportation and Security Administration" that he had been subject to disciplinary action and revealed confidential medical information; namely, his substance use disorder. (ECF No. 1 ¶¶ 14, 18).[6]

In November of 2023, Plaintiff switched from American's HIMS program back to a general FAA HIMS program. (*Id.* ¶ 19). Plaintiff obtained an updated SI, which according to Plaintiff

[5] *See* Transportation Security Administration, *Federal Flight Deck Officer*, https://www.tsa.gov/for-industry/training/federal-flight-deck-officer (last visited Oct. 16, 2025).

[6] Because the FFDO program requires an extensive background check of the pilot including reference to the pilot's medical certificate (which here always contained SI limitations), Defendants assume this allegation to be true for the purposes of this motion only.

"authorized continued operation under medical oversight" but still required that he meet, on a monthly basis, with his chief pilot. (*Id*). His SI, granted under 14 C.F.R. § 67.401, mandated that he attend these meetings in-person with a chief pilot or flight operation supervisor to attest to Plaintiff's "competence, crew interaction, mood, and quality of [his] recovery program." (Exhibit 4, MacEwen SI Jan. 5, 2024 at 4). Captain Airey and, subsequently his successor Captain Wooley, were Plaintiff's Chief Pilots for these meetings. (ECF No. 1 ¶¶ 6-7, 19-21). The meetings were conducted the second week of each month, in PHL. (*Id.* ¶¶ 20-21). Plaintiff claims that Captain Airey provided "no flexibility for rescheduling" these monthly meetings. (*Id.*). Plaintiff asserts that Captain Wooley also refused to reschedule these meetings upon Plaintiff's request and allegedly "imposed restrictions and expectations beyond what is required by the FAA." (*Id.* ¶¶ 7, 25-26).

On or around January 30, 2025, Plaintiff alleges that he received an updated SI specifically removing the requirement for Plaintiff to meet monthly with his Chief Pilot. (*Id.* ¶ 33). Rather than provide a copy of the updated SI to American (as he had with the prior SIs), he informed Defendants that the monthly meeting requirement had been removed, and "ceased participating in unnecessary [monthly] meetings." (*Id.* ¶ 33). On or around January 30, 2025, Captain Wooley requested that Plaintiff provide American with a physical copy of his updated SI. (*Id.* ¶ 34). "Plaintiff declined, citing his right to medical privacy." (*Id.* ¶ 34).

Captain Airey then withheld Plaintiff from service, keeping him in a paid status until his medical certification and SI requirements could be ascertained to ensure compliance with his job and FAA medical qualifications outlined in the CBA. (*Id.* ¶ 35; *see* Ex. 1, Aug. 2023 CBA at § 7-8(F), § 20-1(B) (stating pilots are required to "maintain an FAA First Class Medical Certificate"),

and § 24-4(S)(1) (same)).[7] Plaintiff continued to refuse to produce a physical copy of his SI medical certificate, and instead produced a letter purportedly from the FAA confirming his SI was as he stated it was. (*Id.* ¶¶ 36-37). Plaintiff continued to assert that providing the SI would "violate his rights," and refused to provide it. (*Id.*). Plaintiff ultimately produced a physical copy of his SI certificate to American, which they then confirmed no longer required monthly meetings with his Chief Pilot, and he was returned to service. (*Id.* ¶ 38). Plaintiff remains an active line pilot with American. (*Id.* ¶¶ 4, 9).

During late 2024, Plaintiff's pattern of use of sick days near holidays came to the attention of American. (*Id.* ¶¶ 29, 30). Chief Pilot Firmin conducted a "wellness check concerning [Plaintiff's] use of sick days near holidays" and investigated Plaintiff's absences. (*Id.* ¶¶ 28-29). The investigation resulted in Captain Firmin creating a Personal Event History entry in Plaintiff's employment file. (*Id.* ¶ 30). Captain Firmin informed him that the entry would be made before it was entered, and that Plaintiff could enter a rebuttal to the entry. (*Id.*). Plaintiff did in fact submit a written rebuttal. (*Id.*). Around this time, Plaintiff also filed a Charge of Discrimination, No. 450-2024-0644, which remains pending with the EEOC. (ECF No. 3). Plaintiff filed a second Charge of Discrimination, No. 470-2025-02145, for which he received a notice of right to sue on June 20, 2025. (*Id.*)

---

[7] Consistent with requiring pilots to maintain a FAA First Class Medical Certificate, Supplement L to the CBA addresses circumstances under which a "pilot diagnosed with an alcohol dependency problem must complete the following requirements before being returned to active flight status: . . . "[o]btain a valid FAA Medical Certificate and Airmen Certificates if suspended or revoked" and "successfully complete his/her follow-up testing and aftercare program." (Ex. 1 at Supplement L-12, § 2(b), (c)). It also addresses the circumstances under which American will release and maintain drug and/or alcohol information associated with a pilot's rehabilitation, (Ex. 1 at Supplement L-15, L-16).

### D. Plaintiff's Claims

Plaintiff alleges that Defendants "consistently disregarded" what he terms "good-faith efforts to comply FAA medical requirements," "failed to respect his medical privacy rights," "misrepresent[ed]" information to the FAA, "unnecessarily escalat[ed] [] routine matters," and prepared "false or misleading documentation." (*Id.* ¶ 38). Plaintiff alleges that this conduct caused him "substantial professional hardship, reputational damage, and ongoing emotional distress." (*Id.*). Plaintiff brings claims for violations of the federal Americans with Disabilities Act (Counts I – III), for disability discrimination under the Indiana Civil Rights Act (Count IV), and a state-law tort claim for IIED (Count V). (*Id.* at p. 7).

## ARGUMENT

## I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT ALLEGES MINOR DISPUTES OVER WHICH THE COURT HAS NO SUBJECT MATTER JURISDICTION PURSUANT TO THE RAILWAY LABOR ACT.

### A. Legal Standard On A Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may assert that the court lacks subject matter jurisdiction by motion pursuant to Rule 12(b)(1). When a party moves to dismiss for lack of subject matter jurisdiction, a district court may look beyond the pleadings and view whatever evidence has been submitted on the issue. *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008). Railway Labor Act ("RLA") preemption is properly addressed via a Rule 12(b)(1) motion. *See, e.g., Brown v. Ill. Central R.R. Co.*, 254 F.3d 654, 658, 668 (7th Cir. 2001) (affirming grant of motion to dismiss for lack of subject matter jurisdiction due to RLA preemption); *see also Miller v. S.W. Airlines, Co.*, 926 F.3d 898, 901 (7th Cir. 2019) (noting that dismissal on the basis of Railway Labor Act preemption "should have been labeled either as a judgment on the pleadings, Fed R. Civ. P. 12(c), or a dismissal for lack of subject-matter jurisdiction, as this circuit's decisions suggest."); *Woolridge v. Natl. R.R. Passenger*

*Corp.*, 800 F.2d 647, 648-49 (7th Cir. 1986) (holding that district court properly ruled that it lacked subject matter jurisdiction due to RLA preemption).

### B. Counts I-V Are Precluded By The RLA, Which Preempts Claims That Are "Minor" Disputes

"Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). To that end, the RLA establishes a mandatory arbitral mechanism for minor disputes. *Id.* at 252-53. Minor disputes concern the "interpretation or application" of a CBA or a "disagreement[] over how to give effect to the bargained-for agreement" and therefore "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." *Id.* at 253-54. Accordingly, "a determination that [plaintiff's] complaint[] constitute[s] a minor dispute would pre-empt his state-law action[]." *Id.* at 253. Moreover, "even if [a] claim is grounded upon rights which stem from some source other than the CBA . . . the claim will be preempted [by the RLA] if it cannot be adjudicated without interpreting the CBA, or if it can be 'conclusively resolved' by interpreting the CBA." *Brown*, 254 F.3d at 658 (citing *Hawaiian Airlines*, 512 U.S. at 261-62; *Consol. Rail Corp.*, 491 U.S. at 305.

"In determining whether a dispute can be resolved by reference to an existing agreement"—and thus labeled as minor—the analysis is not confined to the express terms of the written documents. *Bhd. of Ry., Airlines & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 406 (7th Cir. 1988). Courts may also consider implied terms and the parties' past practices. *Id.*; *Consol. Rail Corp.*, 491 U.S. at 311 (collective bargaining agreements may include implied, as well as express, terms, and "the parties' 'practice, usage, and custom' is of significance in interpreting their agreement"). Where there is

disagreement over whether the dispute can be resolved under the CBA, the dispute is considered minor unless the carrier's contractual justification is "frivolous" or "obviously insubstantial." *Bhd. of Ry., Airlines & S.S. Clerks*, 847 F.2d at 406 (citing *Atchison, T. & S. F. Ry. v. United Transp. Union*, 734 F.2d 317, 321 (7th Cir. 1984)). This deferential standard reflects the RLA's overarching goal of minimizing labor disputes; accordingly, an "employer's burden to persuade a court that a dispute is minor" is "relatively light." *Int'l Bhd. of Teamsters v. Republic Airways Inc.*, 127 F.4th 688, 694 (7th Cir. 2025). Indeed, the employer need only show that its interpretation of the CBA "arguably justifies" its conduct. *Id.* So long as the employer's position is not "obviously insubstantial or frivolous, nor made in bad faith," "the court lacks jurisdiction to do anything but dismiss the case and allow arbitration to go forward." *Id.*

In his employment with American, Plaintiff's interests are represented by the APA. (Exhibit 1, Aug. 2023 CBA at 1). Consistent with that authority, APA and American negotiated and arrived upon the terms and conditions applicable to Plaintiff's employment. (*Id.*).

Relevant to Plaintiff's claims here, the CBA prescribes the physical standards of pilots, which includes "being required to maintain an FAA First Class Medical Certificate" (Ex. 1 at § 20-1(B); *see also* § 24(S)(1)). The parties also agreed that American would "retain the ability to . . . investigate the possible abuse of sick leave for cause (which includes, but is not limited to, frequency of use, sick leave patterns and **sick leave use in conjunction with holidays, vacations, or trainings**." (Ex. 1 at § 10-4(7)(h)) (emphasis added).

Plaintiff focuses in his Complaint on actions allegedly taken by American to ascertain his compliance with the Company's HIMS program and the medical requirements of the CBA, his holding and compliance with Special Issuance restrictions on his first class medical certificate due to his alcohol abuse disorder, information regarding his SI restrictions allegedly being provided

when the federal government inquired as to his employment, and a Personal Event History ("PEH") regarding Plaintiff's pattern of sick leave use over holidays. (ECF No. 1 ¶¶ 10, 14, 28, 30, 38). Each of these concern specific terms and conditions of the CBA, which govern when, why, and how pilots must maintain appropriate medical certificates to fly a commercial aircraft, American may release and maintain drug and/or alcohol information associated with a pilot's rehabilitation, and pilots may be subject to sick leave review and entry of a PEH.

Accordingly, Plaintiff's Complaint brings claims that each constitute a quintessential "minor dispute" requiring the "interpretation or application" of a CBA and, therefore, "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." *Hawaiian Airlines*, 512 U.S. at 253-54, 256; *see also Blackwell v. SkyWest Airlines, Inc.*, 2008 WL 5103195, at *13 (S.D. Cal. Dec. 3, 2008) (plaintiff's state law claims for overtime pay and vacation time preempted by the RLA because they are "'inextricably intertwined' with the meaning of the terms in the CBA" where the CBA addresses the same subject but the meaning of that language is unclear).

Thus, to determine whether Defendants' conduct was permissible versus violative of the Americans with Disabilities Act, the Indiana Civil Rights Act, or Indiana state law, necessarily leads to a contract interpretation dispute inextricable from the CBA and outside of the Court's jurisdiction. *See Brown*, 254 F.3d at 657-58 (affirming dismissal of plaintiff's ADA disability discrimination and failure-to-accommodate claims precluded by the RLA because the determination of plaintiff's essential job functions required interpretation of the CBA); *see also Int'l Bhd. of Teamsters*, 127 F.4th at 694 (noting that an employer need only show that its interpretation of the CBA was arguably justified to trigger RLA preemption).

Indeed, as to Count I, Plaintiff contends that Defendants imposed conditions not required by the FAA and coerced disclosure of confidential medical information, seemingly related to non-compliance reports issued to his HIMS-AME, not moving monthly meetings to locations or dates of Plaintiff's choosing, making a PEH entry, and requesting his SI to confirm he adequately maintained a First Class Medical Certificate. (ECF No. 1 at p. 7, ¶¶ 20, 23, 25, 29, 33-37). However, the bases for Defendants' actions requires an arbitrator with the System Board of Adjustment's interpretation of the CBA and the union's past practice with respect to the CBA, specifically Sections 10 (outlining American's ability to initiate an investigation into potential abuse of sick leave), 20 (establishing American's physical standards for pilots—i.e., the essential functions of a pilot's position—as those "required to maintain an FAA First Class Medical Certificate"), and 24 (governing medical procedures permitted for pilots to maintain a First Class Medical Certificate). (Ex. 1 at § 10-4(7)(h); § 20-1(B), § 24-4(S)(1)). Under these circumstances, preclusion is required. *See Brown*, 254 F.3d at 657-58 (affirming dismissal of plaintiff's ADA disability discrimination and failure-to-accommodate claims precluded by the RLA because the determination of plaintiff's essential job functions required interpretation of the CBA).

In Count II, Plaintiff further alleges that Defendants retaliated against him by requesting his SI for the purpose of verifying the validity of his First-Class Medical Certificate (ECF No. 1 ¶¶ 33-35) and withholding him from active flight status until it could do so. (ECF No. 1 at p. 7, ¶¶ 33-37). Plaintiff similarly claims in Count III that Defendants wrongly interfered with his rights by threatening FAA reporting for medical disqualification based on concerns with his maintenance of his medical certificate, making compliance reports to Plaintiff's HIMS-AME, and placing him on unpaid leave if he did not permit Defendant to verify the validity of such certificate. (ECF No. 1 at p. 7, ¶¶ 23-25, 33-37). Though lacking specificity, in Count IV Plaintiff claims he was treated

differently on the basis of his disability due to Defendants' failure to abide by his "updated FAA requirements" and penalizing him for "exercising his legal rights" ostensibly in relation to his refusal to submit his SI to American. (ECF No. 1 at p. 7, ¶¶ 33-37). Again, the mechanism to resolve these claims is the CBA, which mandates the maintenance of a valid First Class Medical Certificate as an essential function of a pilot's employment. (*Supra* at 10-12). Whether any of this alleged conduct was improper under the CBA and the parties' past practices in implementing the CBA is again, for the System Board of Adjustment to determine.

Lastly, as to Count V, Plaintiff avers that Defendants made "false reports" to federal authorities, and misused company disciplinary process, such as initiating a wellness check, making a PEH entry into Plaintiff's employment file, and "coerc[ing]" Plaintiff into providing medical data to confirm the validity of his medical certificate. (ECF No. 1 at p. 7, ¶¶ 28, 30, 33-37). These allegations, as well as necessitating interpretation of the CBA for the aforementioned reasons, again demonstrate that Plaintiff's asserted rights lie within the CBA. For example, Plaintiff claims that his confidential medical information was improperly disclosed. (ECF No. 1 at p. 7). Yet, the CBA specifies that the Company is "in no way limit[ed]" from disclosing information "in response to a subpoena or other legal process," (Ex. 1 at Supplement L-16, § 10(b)(3)). What constitutes a "legal process" is undefined by the CBA and must, therefore, be interpreted by the parties' past practice and bargaining history. *Consol. Rail Corp.*, 491 U.S. at 311 (collective bargaining agreements may include implied, as well as express, terms, and "the parties' 'practice, usage, and custom' is of significance in interpreting their agreement").

As such, the Court lacks jurisdiction over Plaintiff's claims and should dismiss Plaintiff's Complaint in its entirety.

## II. PLAINTIFF'S CLAIMS BASED ON INDIANA STATE LAW (COUNTS IV AND V) ARE ALSO PREEMPTED BY THE FEDERAL AVIATION ACT (FAA).

Plaintiff's claims that seek to challenge the application of FAA requirements for commercial pilots who operate with a SI medical certificate are also preempted by the FAA. "An essential element of the FAA's congressionally mandated airline safety mission is its regulation of crewmembers. *See* 14 C.F.R. pts. 117, 121. Congress has specifically tasked the FAA with "promot[ing] safe flight of civil aircraft . . . by prescribing . . . regulations in the interest of safety for the maximum hours or periods of service of airmen and other employees of air carriers." 49 U.S.C. § 44701(a)(4). Accordingly, the FAA pervasively regulates pilot health and qualifications—which goes to the heart of aviation safety—through, among other things, detailed requirements concerning the medical certification of pilots. *See*, *e.g.*, 14 C.F.R. § 67, Subpart B (regulating the "Medical Standards and Certification" applicable to pilots, or "airmen"), 14 C.F.R. § 67.401 (detailing the procedures for issuing "Special issuance of medical certificates"), 14 C.F.R. § 61.53(a) (prohibiting pilots who hold a SI under 14 C.F.R § 67 from operating in any capacity as a flight crew member while failing to meet the requirements of their medical certificate). The FAA's implementing regulations have so thoroughly occupied the field of crewmember health and fitness for duty that the "density and detail" of the federal regulatory scheme leaves no room for state regulation. Accordingly, state law claims that attempt to "encroach upon, supplement, [and] alter the federally occupied field of aviation safety and present an obstacle to the accomplishment of Congress's legislative goal to create a single, uniform system of regulating that field," and are preempted by the FAA. *Ventress v. Japan Airlines*, 747 F.3d 716, 722-23 (9th Cir. 2014).

In Count IV of his Complaint, Plaintiff alleges that American violated Indiana state law against disability discrimination by allegedly treating him differently on the basis of disability, "failing to accommodate updated FAA requirements," and "penalizing" him for "exercising legal

rights." (ECF No. 1 at p. 7). In Count V, Plaintiff alleges that American's conduct was "extreme and outrageous," under Indiana law. (*Id.* at p. 7). If Plaintiff is successful in his claims, American would be directed under Indiana law to treat Plaintiff differently than required by the parties' CBA and by the FAA. Indiana state law would then dictate American's ability to verify the existence of a valid SI, determine whether a pilot is complying with his FAA restrictions, remove a pilot from flight status while a pilot's flight eligibility is determined, or report concerns regarding pilots to other federal agencies. (*See id.* ¶¶ 14-16, 23, 26, 28-29, 33-37). Plaintiff's state law claims would likewise encroach upon Defendants' obligations to provide reports to the FAA as part of the HIMS program and in conflict with the FAA's requirements. *See* 14 C.F.R. § 61.53(a), (*See also* Ex. 4, at 4) (noting that, every month, Plaintiff "must attend in-person meetings" and provide a report authored by his employer's chief pilot or flight operation supervisor attesting to his compliance). Accordingly, under these circumstances, Defendants cannot be subject to liability under Indiana state-based law for their compliance with FAA requirements. Plaintiff's state-based claims (Counts IV and V) are therefore field-preempted because they each intrude upon a "particular area of aviation … safety … [that] is governed by 'pervasive [federal] regulations.'" *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013) (citation omitted); *see also Ventress*, 747 F.3d at 722 ("Permitting indirect challenges to aviation safety decisions under the guise of state law whistleblower claims interferes with the agency's authority to serve as the principal arbiter of aviation safety."); *Drake v. Laboratory Corp. of Am. Holdings*, 458 F.3d 48, 65-66 (2nd Cir. 2006) (finding state law tort claims completely preempted by the FAA because "[s]tate laws mandating additional or other standards and components for drug-testing programs—whether or not inconsistent with the federal requirements—would require . . . compl[iance] with two separate sets of procedures . . . precisely the sort of burden that the FAA was seeking to avoid.").

## III. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ANY OF THE INDIVIDUAL DEFENDANTS.

### A. Legal Standard On A Motion To Dismiss For Lack Of Personal Jurisdiction

When moving to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The nature of the plaintiff's burden depends on whether the court elects to hold an evidentiary hearing. *Id.* When a hearing is held, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Id.* When, however, a court rules on the motion based on the submission of written materials alone, the plaintiff need only establish a prima facie case of personal jurisdiction.[8] *Id.*

No matter the standard of review chosen by the Court, however, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783. Conclusory assertions that jurisdiction is proper "[are] insufficient to carry [a plaintiff's] burden to 'produce evidence supporting jurisdiction.'" *Rawlins v. Select Specialty Hosp. of Nw. Ind., Inc.*, 2014 WL 1647182, at *4 (N.D. Ill. Apr. 23, 2014).

Plaintiff brings three claims under the Americans with Disabilities Act ("ADA"), as well two claims under Indiana state law. (ECF No. 1 at p. 7). "Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The ADA has no mechanism for nationwide service of process; thus, it, and Plaintiff's state-based claims, are governed by Indiana's long-arm statute. *Spears v. Sur LA. Table, Inc.*, 2022 WL 1241944, at *2 (S.D. Ind. Apr. 4, 2022).

---

[8] Although the court may exercise such review at the motion to dismiss stage, a defendant retains the right to challenge jurisdiction again later in the litigation, after development of a more complete evidentiary record. *Noel v. HCC Ins. Holdings, Inc.*, 2011 WL 13209658, at *4 (W.D. Wis. Sept. 21, 2011).

Indiana's long arm-statute "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (quoting *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006)) (internal quotation marks omitted). Two types of personal jurisdiction exist: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1779–80 (2017).

**B. General Jurisdiction is Lacking as to All Individual Defendants**

The application of general jurisdiction over a defendant requires a plaintiff to meet an exacting standard. Indeed, the exercise of such jurisdiction is appropriate only when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe v. Co. v. Washington*, 326 U. S. 310, 317 (1945)). For purposes of general jurisdiction, individual defendants are considered citizens of the state in which they reside with the intent to remain indefinitely. *Goodyear*, 564 U.S. at 923.

Here, no individual defendant is domiciled in Indiana; Airey is domiciled in Texas, Firmin is domiciled in Virginia, and Wooley is domiciled in Pennsylvania. (Decl. Airey ¶ 2; Decl. Firmin ¶ 2; Decl. Wooley ¶ 2). Clearly, no individual defendant is "at home" in Indiana. And no defendant has sufficient affiliations with the state, as none own property, conduct business, travel, or have family located in the state. (Decl. Airey, ¶¶ 2-6; Decl. Firmin, ¶¶ 2-6; Decl. Wooley, ¶¶ 2-6). General jurisdiction over all individual defendants is glaringly absent under these circumstances. *See Johnson v. Melton Truck Lines, Inc.*, 2016 WL 8711494, at *3 (N.D. Ill. Sept. 30, 2016) (no general jurisdiction where defendants' contacts with the forum state were limited to sporadic calls and emails, falling far short of the "continuous and systematic" presence requirement).

### C. No Specific Jurisdiction Exists for Any Individual Defendant

Specific jurisdiction requires an assessment of whether a plaintiff's claims "'arise out of' or 'relate to' a defendant's forum contacts." *Grant-Overton v. Fort Wayne Urban League, Inc.*, 2021 WL 1549736, at *2 (N.D. Ind. Apr. 20, 2021) (internal citation omitted). "[A] defendant's contacts with the forum state must directly relate to the challenged conduct or transaction" to support the exercise of specific jurisdiction, *Tamburo*, 601 F.3d at 702, and cannot violate traditional notions of fair play and substantial justice. *N. Grain Marketing, LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Contacts that are "'random,' 'fortuitous,' or 'attenuated'" are insufficient to establish a forum state's jurisdiction over a defendant. *Id.* at 493, *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984) (internal citation omitted). Accordingly, specific jurisdiction only exists when: (1) a defendant directs his "activities at the forum state or purposefully avail[s] himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Marketing, LLC*, 743 F.3d at 492 (internal citation omitted).

Here, however, it is clear that no defendant directed his or her activities at Indiana, conducted business in the state, or that any alleged injury Plaintiff suffered resulted from any individual Defendant's contacts within Indiana, and Plaintiff has not alleged any such contacts with Indiana. (*See generally* ECF No. 1). As mentioned, no individual Defendant is domiciled in Indiana, owns property in the state, or conducts business activities in the state. (Decl. Airey, at ¶¶ 2-6; Decl. Firmin, at ¶¶ 2-6; Decl. Wooley, at ¶¶ 2-6). It is equally clear that any alleged injury Plaintiff attributes to Defendants have no ties to or toward Indiana. Indeed, Plaintiff alleges that Airey, "at all relevant times," and Wooley were based in DCA or PHL. (ECF No. 1 ¶¶ 6-7). Firmin was also based in Washington, DC. (*Id.* ¶ 8). Plaintiff further specifies that Airey and Wooley required him to meet with him at PHL or DCA (*Id.* ¶¶ 20-23, 25), but does not—and cannot—

allege that any of Defendants' purported conduct occurred in Indiana. (*See* Decl. Airey, at ¶¶ 2-6; *see also* Decl. Firmin, at ¶¶ 2-6; *see also* Decl. Wooley, at ¶¶ 2-6). As such, the Court lacks personal jurisdiction over the individual Defendants. *See Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (for personal jurisdiction to exist, "[t]he record must show that the defendants targeted the forum state.").

## IV. PLAINTIFF'S COMPLAINT ALSO FAILS TO STATE A CLAIM FOR RELIEF.

### A. Standard of Review On A Rule 12(b)(6) Motion

"When considering a Rule 12(b)(6) motion to dismiss, the court accepts all of the complaint's well-pleaded allegations as true and draws all favorable inferences for the plaintiff." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). To survive a motion to dismiss, a complaint must be plausible on its face, meaning that the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). This requires Plaintiff to allege more than mere "labels and conclusions" or "formulaic recitation[s] of the cause of action." *Bell Atl. Corp.*, 550 U.S. at 545. When deciding a motion to dismiss, the Court may consider any documents that are referred to in the complaint and central to a plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

### B. Plaintiff's Federal ADA Claims Should Be Dismissed

#### 1. Plaintiff Failed to Exhaust His Administrative Remedies On Almost All Of The Claims He Brings

Plaintiff's discrimination, retaliation, and interference claims under the ADA must be dismissed to the extent he failed to exhaust his administrative remedies as required by the ADA.

Before filing a complaint in federal court under the ADA, a plaintiff must file a timely charge of discrimination with the EEOC asserting his disability claims. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (adopting Title VII enforcement scheme and remedies for the ADA). The lawsuit that follows is limited to claims that are within the scope of the exhausted administrative charge of discrimination. *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) ("Generally, a plaintiff may not bring claims [under the ADA] that were not originally included in the charges made to the EEOC.").

The purpose of requiring exhaustion is to "give[] the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

Despite this requirement, Plaintiff's Complaint raises allegations and claims that were not included in his non-exhausted charge. In his charge—the only charge for which Plaintiff received a Right to Sue Notice (ECF No. 1-3)—Plaintiff described the following acts:

> (1) that on January 22, 2025, he was issued an updated SI;
>
> (2) on January 27, 2025, he informed to Captain Airey that he was "fit to fly";
>
> (3) on February 8, 2025, he provided Airey and Wooley with a temporary FAA authorization confirming his clearance;
>
> (4) on February 11, 2025, he provided a letter from his doctor confirming his FAA authorization;
>
> (5) on February 13, 2025, he was informed that if he refused to provide his medical certificate, that he would be placed on paid leave;
>
> (6) on February 14, 2025, he was reinstated to active flight duty after showing the requested certificate.

(Exhibit 5, Charge of Discrimination No. 470-2025-02145 at 1-2).

These discrete allegations cannot be plausibly said to "relate back" to Plaintiff's allegations concerning his application for the Federal Flight Deck Officer program, disputed noncompliance reports, investigations into Plaintiff's use of sick time, or Plaintiff's interactions with Airey or Wooley as part of the HIMS or FAA-SI program, actions Plaintiff describes as taking place *years* before the allegations in his charge. (*Compare* Ex. 5 at 1-2, *with* ECF No. 1 ¶¶ 13-32). The charge does not contain *any* allegations that would support Plaintiff's claims regarding ADA interference, nor does it support Plaintiff's allegations exceeding the scope of his charge. (*Compare* Ex. 5 at 1-2, *with* ECF No. 1 at 7, at ¶¶ 13-32). Given that Plaintiff's allegations raise entirely new claims and concern wholly distinct conduct, Plaintiff's allegations cannot plausibly be said to "relate back" to the charge underlying this lawsuit. *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004-06 (7th Cir. 2019) (holding that disparate treatment claim did not relate back because it raised new allegations depriving defendant from having an opportunity for conciliation).

### 2. Plaintiff's Exhausted ADA Claims Also Fail Because He Is Not Eligible For Relief Under the ADA and Can Establish No Causal Connection Between His Alleged Protected Conduct And The Alleged Retaliation

Plaintiff's claims for which he received a notice of right to sue also fail because, according to his own allegations, he was not a "qualified individual" under the ADA. To establish a disability discrimination claim under the ADA, a plaintiff must be a "qualified individual" or someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8); 42 U.S.C. § 12112(a) ("[n]o covered entity shall discriminate against a qualified individual on the basis of disability"). An essential function of Plaintiff's position as a line pilot was to abide by American's physical requirements applicable to pilots, which are "those standards set forth in the FAA Regulations as being required

to *maintain* an FAA First Class Medical Certificate" (Ex. 1 at § 20-1(B)) (emphasis added); (*see also* Ex. 1 at § 24-4(S)(1)) (same).

These FAA regulations mandate "hold[ing] a first-class medical certificate" to exercise pilot privileges, 14 C.F.R. § 61.23(A), not simply obtaining a letter purporting that he received one. Based on Plaintiff's Complaint, Defendants believed that Plaintiff was violating his FAA-issued SI, which, in turn, precluded him from performing an essential function of his employment. (ECF No. 1 ¶ 35; Ex. 1 at § 20-1(B), § 24-4(S)(1)). For this reason, Plaintiff cannot establish that he was a qualified individual, and his disability discrimination claim must fail. *Rodrigo v. Carle Found. Hosp.* 879 F.3d 236, 242-43 (2018) (dismissing disability discrimination claim due to plaintiff's inability to pass a medical licensing test, which was an essential function of the job and required to be a licensed physician); *see also Leisen v. City of Shelbyville*, 153 F.3d 805, 808 (7th Cir. 1998) (finding that fire department was entitled to require paramedic certification as a core qualification for firefighter position, and an employee who was unable to obtain such certification was not a "qualified individual" for the purposes of the Americans With Disabilities Act).

Plaintiff's ADA retaliation claim likewise fails. To establish a retaliation claim under the ADA, Plaintiff must establish (1) that he engaged in protected activity; (2) that he suffered an adverse action; and (3) a causal connection between the protected conduct and adverse action. *Rodrigo*, 879 F.3d at 243. However, Plaintiff's Complaint is devoid of facts indicating any causal connection between his purported protected activity and any adverse action. In his Charge, Plaintiff attributes Defendants' request for his SI as being in retaliation for "asserting his right to medical privacy and filing an EEOC Charge." Yet, Plaintiff's Complaint makes clear that Defendants' request for his SI is the conduct that *caused* him to engage in the alleged protected activity—asserting that he need not provide it because he had a purported "right to medical privacy." (ECF

No. 1 ¶¶ 33-35). Plaintiff cannot use his actions *following* Defendants' alleged retaliatory behavior to support his retaliation claim, particularly where he has conceded that Defendants sought a physical copy of his SI due to their belief that he "violated his FAA-issued Special Issuance" instead of due to any purported protected conduct. (*Id.* at ¶ 35).

To the extent Plaintiff attributes this request to the filing of his Charges of Discrimination, Defendants' alleged retaliatory acts occurred between January and February of 2025, and could not have been based on his Charge filed four months later. (*Id.* at ¶ 33-37; Ex. 5 at 2). Nor, as a matter of law, can Plaintiff establish a causal connection between the filing of his first Charge of Discrimination, filed on September 5, 2024, and Defendants' actions over four months later, because they were responding directly (as he concedes they were) to his refusal to produce a copy of his SI required by the CBA and federal law. (ECF No. 1 ¶¶ 3, 33-35); *see Carlson v. CSX Transp. Inc.*, 2012 WL 1657117, at *6 (S.D. Ind. May 10, 2012) ("[T]he Seventh Circuit as well as district courts within the Seventh Circuit, have concluded that, without more, the passing of three to four months between an employee's engagement in a protected activity and subsequent adverse employment action is insufficient to establish a causal connection for the purposes of a retaliation claim.").

### 3. The ADA Does Not Permit Individual Liability

Plaintiff cannot maintain his ADA claims (Counts I – III) against any individual defendants. Put simply, individuals cannot be held liable under the ADA. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (noting that individual employees are "not amenable to suit under the . . . ADA"); *see also Rashad v. USF Holland LLC US*, 2025 WL 1939886, at *3 (S.D. Ind. July 24, 2024) ("ADA claims cannot be brought against employees in their individual capacity.") Defendants Airey, Firmin, and Wooley are individual employees of American. (Decl.

Airey ¶ 2; Decl. Firmin ¶ 2; Decl. Wooley ¶ 2; *see also* ECF No. 1 ¶¶ 6-8, 28). As such, Plaintiff's ADA claims (Counts I – II) against all individual Defendants must be dismissed with prejudice.

### C. Plaintiff's Indiana Disability Claims Should Be Dismissed

Plaintiff avers that Defendants violated his rights under "Indiana's civil rights statute," citing Indiana Code § 22-9-5. (ECF No. 1 at 7, Count IV). "Indiana Code § 22-9-5-1 *et seq.*, [is] a chapter of the broader Indiana Civil Rights Act which is entitled Employment Discrimination Against Disabled Persons." *Sturdivant v. Indiana Prot. & Advoc. Servs.*, 2003 WL 26612797, at *7 (S.D. Ind. Sept. 26, 2003). The Indiana Civil Rights Act ("ICRA") specifies the process through which claims of discrimination are investigated and prosecuted, providing the Indiana Civil Rights Commission the exclusive authority to conduct hearings and award relief on behalf of aggrieved individuals. *Id.* This administrative process may be "bypassed, but only in one narrow circumstance: if both the party making the complaint and the party responding to it agree in writing to have the matter decided in a court of law. Ind. Code § 22-9-1-16. **Otherwise, there is no private right of action**." *Johnson v. CRF First Choice, Inc.*, 2016 WL 5341253, at *4 (S.D. Ind. Sept. 22, 2016) (emphasis added). Plaintiff has not – and cannot – allege that he and any defendant agreed in writing to litigate his potential ICRA claims. (*See generally* ECF No. 1). Accordingly, Plaintiff's claims under the ICRA must be dismissed.

### D. Plaintiff's IIED Claim Should Be Dismissed

#### 1. The Complaint Fails to Allege Extreme or Outrageous Conduct

Courts have explained that plaintiffs, especially in the employment context, face an uphill battle when attempting to assert an IIED claim. *Schmees v. Hc1.Com, Inc.*, 2020 WL 708037, at *5 (S.D. Ind. Jan. 12, 2020) ("Intentional infliction of emotional distress claims are rarely successful in employment cases."); *Lemaster v. Spartan Tool, LLC*, 2009 WL 700240, at *5 (S.D.

Ind. Mar. 16, 2009) ("[C]laims for intentional infliction of emotional distress in the employment context are far less likely to constitute extreme and outrageous conduct under this tort.").

Under Indiana law, to establish an IIED claim, a plaintiff must show that the defendants: "(1) engaged in extreme and outrageous conduct that; (2) intentionally or recklessly; (3) caused; (4) severe emotional distress to [the plaintiff]." *Tracy v. Fin. Ins. Mgmt. Corp.*, 458 F. Supp. 2d 734, 747 (S.D. Ind. 2006). In defining the first element, Indiana has held that liability attaches "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999). Whether conduct meets this "extreme and outrageous" threshold is a determination that may be made as a matter of law. *Id.* at 753.

As an initial matter, Plaintiff's allegations are conclusory, merely echoing the elements of his IIED claim without offering sufficient factual support—an insufficiency that alone warrants dismissal. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a 12(b)(6) motion); *see also Yeatts v. Zimmer Biomet Holdings, Inc.*, 2017 WL 1375117, at *5-*6 (N.D. Ind. Apr. 17, 2017) (dismissing IIED claim where plaintiff alleged in conclusory fashion that defendant's conduct was extreme and outrageous). In Count V, Plaintiff simply states that "Defendants' conduct was extreme and outrageous" characterizing Defendants' alleged conduct of making "false reports," "coercive demands" and "misu[s]ing company disciplinary processes," causing him "severe emotional distress and reputational injury," (ECF No. 1 at p. 7), and general "ongoing emotional distress." (ECF No. 1 ¶ 38). However, devoid from the Complaint is any clarity or explanation as

to what "emotional distress" Plaintiff suffered. For this reason alone, Plaintiff's IIED claim must be dismissed. *See Yeatts*, 2017 WL 1375117, at *5-6.

Moreover, Plaintiff's claim must be dismissed because it does not concern conduct sufficiently "extreme or outrageous" under Indiana law. Plaintiff appears to rely solely on alleged discrimination, harassment, and retaliation in the workplace to sustain his IIED claim. However, alleged adverse employment decisions rarely amount to "extreme and outrageous conduct" that support an IIED claim, even if Plaintiff faced discriminatory or retaliatory animus. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (affirming dismissal despite allegations that the employer engaged in a "continuous series of intentionally discriminatory acts" including damaging and vandalizing the plaintiff's vehicle on multiple occasions and eavesdropping on her telephone calls); *Robinson v. Lake Minnehaha Owner's Assoc.*, 2012 WL 6197150, *6-7 (N.D. Ind. Dec. 12, 2012) (granting a motion to dismiss IIED claim based on alleged discriminatory termination, reasoning: "[a]lthough loss of employment causes hardship, often severe, it is not an uncommon event, even when based on unlawful and improper motives."); *Lemaster v. Spartan Tool, LLC*, 2009 WL 700240, *5-6 (S.D. Ind. March 16, 2009) (granting motion to dismiss IIED claim and noting that adverse employment situations rarely constitute extreme and outrageous conduct required to sustain tort of emotional distress).

At most, Plaintiff's Complaint concerns the same "discriminatory or retaliatory animus" that this Circuit has rejected to maintain an IIED claim. *Harriston*, 992 F.2d at 703. Indeed, Plaintiff states that his IIED claim is based on Defendants' alleged making of "false reports to federal authorities, coercive demands for protected medical data, and the misuse of company disciplinary processes." (ECF No. 1 at p. 7, Count V). However, in Plaintiff's claims for discrimination, retaliation, and interference, Plaintiff references the same conduct, including

"threats of FAA reporting, medical disqualification, and unpaid leave" "coerc[ing] disclosure of confidential medical information," and "treating Plaintiff differently on the basis of disability." (ECF No. 1 at p. 7, Counts I-IV). Plaintiff's attempt to support his IIED claim solely through the same factual allegations underlying his discrimination, interference, and retaliation claims falls short of the legal standard for pleading extreme and outrageous conduct, warranting dismissal of Plaintiff's claim. *See Secrease v. W. & S. Life Ins. Co.*, 2014 WL 12768454, at *7 (S.D. Ind. Dec. 3, 2014) (dismissing IIED claim where plaintiff relied on his discrimination and retaliation claims which are insufficient to support conclusion that conduct was extreme and outrageous); *see also Robinson*, 2012 WL 6197150, at *6 (granting motion to dismiss IIED claim where the plaintiff relied on the same facts in his discrimination claim to support his IIED claim).

**2. Plaintiff Has Not Alleged the Requisite Intent**

Plaintiff's IIED claim likewise fails because he has not alleged that Defendants acted with the intent to inflict emotional harm. To support an IIED claim, a defendant must intend to harm a plaintiff *emotionally*. *Bradley*, 720 N.E.2d at 752 ("[i]t is the intent to harm one emotionally that forms the basis for the tort."); *see also George v. Republic Airways*, 2021 WL 1022428, at *6-*7 (S.D. Ind. Mar. 17, 2021) (granting motion to dismiss IIED claim for failing to allege intent to cause emotional harm despite allegations of "sinister targeting" with the intent of firing her following her participation in an internal investigation).

Based on Plaintiff's Complaint the "harm" Defendants allegedly intended was "to portray him as noncompliant or unstable" and/or "to provoke FAA disciplinary action or medical certificate revocation, thereby threatening his career and financial security." (ECF No. 1 ¶¶ 31-32). Plaintiff does not allege Defendants acted with the intent to cause him emotional harm, instead limiting any purported intended harm to reputational or pecuniary harms. (ECF No. 1 ¶¶ 31-32).

For this additional reason, Plaintiff's claim for intentional infliction of emotional distress must be dismissed.

## CONCLUSION

For these reasons, Defendants respectfully ask that the Court dismiss Plaintiff's Complaint, *with prejudice*, because his claims are fatally flawed and could not be cured with any amendment.

DATED: October 24, 2025

Respectfully submitted,

By: */s/ Ada W. Dolph*
Ada W. Dolph

Ada W. Dolph
adolph@seyfarth.com
Taylor C. Iaculla, (*admitted pro hac vice*)
tiaculla@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

***Attorneys for Defendants***
***American Airlines,***
***Captain Timothy Airey,***
***Captain Keith Firmin, and***
***Captain Adrienne Wooley***

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with the Court's electronic case filing system (ECF) on October 24, 2025, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

*/s/ Ada W. Dolph*
Ada W. Dolph