**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

CAPTAIN MAURICE MACEWEN,

Plaintiff,

v.

AMERICAN AIRLINES, INC.,

Defendant.

Case No.  1:25-cv-01580-TWP-MJD

## DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant American Airlines, Inc., ("American" or "Defendant")[1] by and through its

attorneys, Seyfarth Shaw LLP, hereby submits its answer and defenses to Plaintiff Captain

Maurice MacEwen's First Amended Complaint ("Complaint").

**I.       NATURE OF THE ACTION**

**COMPLAINT ¶1:**

This is an action for disability discrimination, failure to accommodate, interference, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and for religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against Defendant American Airlines, Inc. ("American").

**ANSWER:**

Defendant admits that Plaintiff brought claims of disability discrimination, failure to

accommodate, interference, and retaliation based on the Americans with Disabilities Act of

1990, as amended ("ADA"). Defendant denies all remaining allegations in Paragraph 1 of the

First Amended Complaint because Plaintiff's claims pursuant to Title VII of the Civil Rights Act

of 1964 ("Title VII") were dismissed by the Court on June 9, 2026. (ECF No. 40.)

---

[1] All other defendants were dismissed from this Action by the Court on June 9, 2026.  (ECF No. 40.)

**COMPLAINT ¶2:**

Plaintiff also brings a state-law claim for Intentional Infliction of Emotional Distress ("IIED") under Indiana common law against all Defendants: American, Captain Timothy Airey, Captain Adrienne Wooley, and Captain Keith Firmin.

**ANSWER:**

American denies the allegations in Paragraph 2 of the First Amended Complaint to the extent they purport to state a claim for Intentional Infliction of Emotional Distress, as the claim was dismissed in its entirety by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶3:**

In 2017, Captain MacEwen voluntarily disclosed a history of alcohol misuse, entered the FAA's HIMS program, and has maintained continuous sobriety for many years.

**ANSWER:**

Defendant lacks sufficient knowledge or information to form a belief as to the allegations asserted in Paragraph 3 and, on this basis, denies all allegations contained in Paragraph 3 of the First Amended Complaint.

**COMPLAINT ¶4:**

Rather than reasonably accommodate his disability and recognize his long-term recovery, Defendants used his medical status and Special Issuance as leverage to coerce him into Alcoholics Anonymous ("AA"), a religiously based 12-step program; maintained unnecessarily rigid and punitive company-level requirements around FAA monitoring; interfered with his federally protected rights (including medical privacy); and retaliated against him when he objected and engaged in protected activity.

**ANSWER:**

Defendant denies the allegations in Paragraph 4 of the First Amended Complaint.

**COMPLAINT ¶5:**

Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages where permitted by law, and such other relief as the Court deems just and proper, together with the costs of suit. Plaintiff does not seek reinstatement or back pay.

**ANSWER:**

Defendant admits that Plaintiff seeks the relief described in Paragraph 5 of the First

Amended Complaint. However, Defendant denies that Plaintiff is entitled to the relief specified

in Paragraph 5 or to any relief whatsoever.

**COMPLAINT ¶6:**

Plaintiff's rights under the ADA and Title VII arise from federal statute and exist independently of any collective bargaining agreement between American and any union. This action does not allege breach of contract and does not require interpretation of any collective bargaining agreement; it concerns Defendants' compliance with federal anti-discrimination statutes and state tort law.

**ANSWER:**

Defendant denies the allegations in Paragraph 6 of the First Amended Complaint.

**II.    JURISDICTION AND VENUE**

**COMPLAINT ¶7:**

This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under the ADA and Title VII.

**ANSWER:**

Defendant denies the allegations in Paragraph 7 of the First Amended Complaint.

**COMPLAINT ¶8:**

The Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202.

**ANSWER:**

For purposes of this litigation only, Defendant admits the allegations in Paragraph 8 of

the First Amended Complaint.

**COMPLAINT ¶9:**

The Court has supplemental jurisdiction over Plaintiff's state-law IIED claim under 28 U.S.C. § 1367 because it arises out of the same nucleus of operative facts as the federal claims.

**ANSWER:**

No response is required as the allegations in Paragraph 9 concern Plaintiff's IIED claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶10:**

Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District, and Plaintiff resides in Fishers, Indiana while employed as an American Airlines pilot.

**ANSWER:**

Defendant admits that Plaintiff purports to bring claims based on conduct that he alleges he experienced while residing in Fishers, Indiana and employed by Defendant as a pilot. Defendant denies all remaining allegations contained in Paragraph 10 of the First Amended Complaint.

**III.   PARTIES**

**COMPLAINT ¶11:**

Plaintiff Captain Maurice MacEwen is a natural person and citizen of the State of Indiana. He resides in Fishers, Indiana. He is currently employed as a professional airline pilot with American and is based at Washington National Airport ("DCA").

**ANSWER:**

Upon information and belief, Defendant admits the allegations in Paragraph 11 of the First Amended Complaint.

**COMPLAINT ¶12:**

Plaintiff is an individual with a "disability" within the meaning of the ADA, including a record of impairment and being regarded as having such an impairment, based on his past diagnosis and treatment for alcohol misuse and his participation in the FAA HIMS/Special Issuance framework.

**ANSWER:**

The statements in Paragraph 12 of the First Amended Complaint are legal conclusions to which no response is required. To the extent that a response is required, Defendant admits only that Plaintiff received a Special Issuance license.

**COMPLAINT ¶13:**

At all relevant times, Plaintiff was and is qualified to perform the essential functions of his position as an airline captain, with or without reasonable accommodation. He has maintained a valid first-class medical certificate and complied with FAA HIMS/Special Issuance requirements.

**ANSWER:**

The statements in Paragraph 13 of the First Amended Complaint are legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 13 of the First Amended Complaint.

**COMPLAINT ¶14:**

Defendant American Airlines, Inc. is a Delaware corporation and major U.S. air carrier. American employs well over fifteen employees and is an "employer" within the meaning of the ADA and Title VII.

**ANSWER:**

For purposes of this litigation only, Defendant admits the allegations in Paragraph 14 of the First Amended Complaint.

**COMPLAINT ¶15:**

American utilizes and relies on Aviation Medical Advisory Services ("AMAS") to provide medical advisory and HIMS-related services to its pilots. AMAS physicians and staff, in coordinating and directing pilots' participation in HIMS and related programs, act as American's agents and under American's authority and control.

**ANSWER:**

Defendant denies the allegations in Paragraph 15 of the First Amended Complaint.

**COMPLAINT ¶16:**

Defendant Captain Timothy Airey ("Captain Airey") is, upon information and belief, currently employed by American in a senior flight operations role. During the events described in this Complaint, Captain Airey served in a management capacity over the Philadelphia ("PHL") base, exercised supervisory authority over Plaintiff during his temporary assignment there, and had the ability to influence Plaintiff's job status, monitoring, and reporting.

**ANSWER:**

Defendant admits only that Captain Timothy Airey is currently employed by American and held a management role involving the PHL base. Defendant denies the remaining allegations in Paragraph 16 of the Amended Complaint.

**COMPLAINT ¶17:**

Defendant Captain Adrienne Wooley ("Captain Wooley") is, upon information and belief, currently employed by American in a senior flight operations role. During the events described herein, she served as the Chief Pilot of the PHL base and exercised supervisory authority over Plaintiff while he was temporarily based in Philadelphia, including with respect to his Special Issuance monitoring and monthly meetings.

**ANSWER:**

Defendant admits only that Captain Adrienne Wooley is currently employed by American and once served as Chief Pilot of the PHL base. Defendant denies the remaining allegations in Paragraph 17 of the First Amended Complaint.

**COMPLAINT ¶18:**

Defendant Captain Keith Firmin ("Captain Firmin") is, upon information and belief, currently employed by American as a pilot and no longer serves as a Chief Pilot. During the events described in this Complaint, he served as the Chief Pilot of the DCA base, which was Plaintiff's bid base at the beginning and end of the relevant period, and exercised decision-making authority regarding Plaintiff's career opportunities, including communications with the Transportation Security Administration ("TSA") about Plaintiff.

**ANSWER:**

Defendant admits only that Captain Keith Firmin is currently employed by American and once served as Chief Pilot of the DCA base. Defendant denies the remaining allegations in Paragraph 18 of the First Amended Complaint.

**COMPLAINT ¶19:**

At all relevant times, Captains Airey, Wooley, and Firmin acted as agents, supervisors, and decision-makers for American, within the scope of their employment and authority. Their actions and omissions described below are attributable to American under principles of agency, respondeat superior, and ratification.

**ANSWER:**

Defendant denies the allegations in Paragraph 19 of the First Amended Complaint.

**COMPLAINT ¶20:**

During Plaintiff's employment at American, his bid base was primarily DCA, with a short-term assignment at PHL. While at PHL, his primary management contacts were Captains Airey and Wooley; while at DCA, his primary management contact was Captain Firmin and the DCA chief-pilot office.

**ANSWER:**

Defendant admits that Plaintiff's base was primarily DCA while employed with

American. Defendant denies the remaining allegations in Paragraph 20 of the First Amended

Complaint.

## IV.    ADMINISTRATIVE EXHAUSTION

**COMPLAINT ¶21:**

Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), including Charge No. 450-2024-06444 and Charge No. 470-2025-02145.

**ANSWER:**

Defendant denies the allegations in Paragraph 21 of the First Amended Complaint.

**COMPLAINT ¶22:**

Charge No. 470-2025-02145 alleged disability-based discrimination, interference, retaliation, and related religious-based discrimination and retaliation arising from American's treatment of Plaintiff in connection with his HIMS/Special Issuance status, AA requirements, and related company-level handling.

**ANSWER:**

Defendant denies the allegations in Paragraph 22 of the First Amended Complaint.

**COMPLAINT ¶23:**

On or about June 20, 2025, the EEOC issued a Notice of Right to Sue with respect to Charge No. 470-2025-02145, and Plaintiff received that notice shortly thereafter. This action is filed within ninety (90) days of Plaintiff's receipt of that Notice of Right to Sue.

**ANSWER:**

Defendant lacks sufficient knowledge or information to form a belief as to the date in which Plaintiff received the Notice of Right to Sue in relation to EEOC Charge No. 470-2025-02145 and, on this basis, denies that allegation. Defendant admits the remaining allegations in Paragraph 23 of the First Amended Complaint.

**COMPLAINT ¶24:**

Charge No. 450-2024-06444 remains pending before the EEOC. Plaintiff does not assert separate causes of action in this lawsuit based solely on allegations unique to that still-pending charge, but reserves any such claims consistent with federal law and any future right-to-sue notice.

**ANSWER:**

Defendant denies the allegations in Paragraph 24 of the First Amended Complaint.

**COMPLAINT ¶25:**

Plaintiff incorporates by reference the allegations presented in his EEOC charges to the extent they are consistent with this First Amended Complaint.

**ANSWER:**

Defendant denies the allegations contained in this paragraph to the extent they purport to incorporate allegations from Plaintiff's EEOC charges, and denies that Plaintiff is entitled to any relief requested therein or any relief whatsoever.

**V.    FACTUAL ALLEGATIONS**

**COMPLAINT ¶26:**

Plaintiff is a qualified airline captain and professional pilot who began his aviation career in or around 2007.

**<u>ANSWER:</u>**

Defendant admits that Plaintiff worked as an airline captain with American. Defendant denies the remaining allegations in Paragraph 26 of the First Amended Complaint.

**<u>COMPLAINT ¶27:</u>**

In 2017, while employed by PSA Airlines, a wholly owned subsidiary of American Airlines, Plaintiff voluntarily disclosed an alcohol problem to aviation medical authorities and entered the FAA's Human Intervention Motivation Study ("HIMS") program.

**<u>ANSWER:</u>**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations asserted in Paragraph 27, which concern Plaintiff's employment with or actions taken by PSA Airlines, a separate corporate entity that is neither wholly owned by American Airlines, Inc., nor a defendant in this action. Accordingly, Defendant denies all allegations in Paragraph 27 of the First Amended Complaint.

**<u>COMPLAINT ¶28:</u>**

As part of entering HIMS and seeking to continue his flying career, Plaintiff was formally diagnosed with a substance use disorder and became subject to FAA-approved monitoring and Special Issuance ("SI") medical certification.

**<u>ANSWER:</u>**

Upon information and belief, Defendant admits only that Plaintiff participated in a HIMS program and was subject to an FAA-approved monitoring and Special Issuance medical certification. Defendant denies the remaining allegations in Paragraph 28 of the First Amended Complaint.

**<u>COMPLAINT ¶29:</u>**

At the very beginning of his HIMS involvement, Plaintiff was directed and pressured into Alcoholics Anonymous (AA) as part of his mandated treatment and monitoring.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations asserted in Paragraph 29, which concern Plaintiff's employment with PSA Airlines, a separate corporate entity that is not a defendant in this action. To the extent this allegation concerns Plaintiff's employment with American, it is denied. Defendant denies all remaining allegations in Paragraph 29 of the First Amended Complaint.

**COMPLAINT ¶30:**

Plaintiff was coerced into AA by AMAS, which was providing medical advisory services to pilots and which American utilized and relied upon in connection with its pilots' medical and HIMS-related issues.

**ANSWER:**

Defendant denies the allegations in Paragraph 30 of the First Amended Complaint.

**COMPLAINT ¶31:**

AMAS representatives made clear that participation in AA was not presented as an optional personal choice, but as a condition of successfully navigating HIMS, retaining Plaintiff's medical certificate, and keeping his flying career.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations asserted in Paragraph 31, which concern Plaintiff's employment with PSA Airlines, a separate corporate entity that is not a defendant in this action. To the extent this allegation concerns Plaintiff's employment with American, it is denied. Defendant denies all remaining allegations in Paragraph 31 of the First Amended Complaint.

**COMPLAINT ¶32:**

Plaintiff's acceptance into AA, and his ongoing participation in it, were therefore not freely chosen religious activities, but the result of coercion linking his employment and medical status to his agreement to participate in a religiously oriented program.

10

**ANSWER:**

No response is required as the statements in Paragraph 32 of the First Amended

Complaint relate to claims dismissed by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶33:**

Within approximately two months of entering HIMS and AA, during his second "quad" meeting, a peer monitor told Plaintiff to "sit down, shut the fuck up, and do what you're told." This incident reinforced that the environment was punitive and hostile, rather than supportive or genuinely therapeutic.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations asserted in Paragraph 33, which concern Plaintiff's employment with PSA Airlines, a

separate corporate entity that is not a defendant in this action. To the extent this allegation

concerns Plaintiff's employment with American, it is denied. Defendant denies all remaining

allegations in Paragraph 33 of the First Amended Complaint.

**COMPLAINT ¶34:**

Over the next several years, Plaintiff complied with extensive HIMS and AA-related requirements. He underwent hundreds of drug and alcohol tests and attended hundreds of meetings, all of which were negative for alcohol or drugs. Plaintiff has never relapsed during his time in the HIMS program or during his recovery.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations asserted in Paragraph 34, which concern Plaintiff's employment with PSA Airlines, a

separate corporate entity that is not a defendant in this action. To the extent this allegation

concerns Plaintiff's employment with American, it is denied. Defendant denies all remaining

allegations in Paragraph 34 of the First Amended Complaint.

**COMPLAINT ¶35:**

Despite his cooperation and continued abstinence, Plaintiff was held out of service for approximately two years—not because of any relapse, but because of his non-religious beliefs and his refusal to fully adopt AA's religious language and ideology.

**ANSWER:**

No response is required as the statements in Paragraph 35 of the First Amended

Complaint relate to claims dismissed by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶36:**

AMAS and associated program actors repeatedly insisted that AA was the only acceptable recovery pathway if Plaintiff ever hoped to continue his career and maintain his medical certification. Plaintiff's preference for secular, evidence-based alternatives was treated as resistance, rather than a legitimate exercise of his rights.

**ANSWER:**

No response is required as the statements in Paragraph 36 of the First Amended

Complaint relate to claims dismissed by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶37:**

Plaintiff experienced severe internal conflict. He was effectively forced to say things he did not believe and to participate in religiously tinged practices that conflicted with his convictions. Ultimately, under intense pressure to support his family and maintain his career, he complied sufficiently to obtain and maintain a Special Issuance.

**ANSWER:**

No response is required as the statements in Paragraph 37 of the First Amended

Complaint relate to claims dismissed by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶38:**

After years of monitoring and coercion, Plaintiff was eventually granted a Special Issuance first-class medical certificate. His monitoring conditions remained strict and long-term under the FAA framework applicable to similarly situated pilots.

12

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations asserted in Paragraph 38, which concern Plaintiff's employment with PSA Airlines, a separate corporate entity that is not a defendant in this action.  To the extent this allegation concerns Plaintiff's employment with American, it is denied. Defendant denies all remaining allegations in Paragraph 38 of the First Amended Complaint.

**COMPLAINT ¶39:**

In 2019, Plaintiff began working for American Airlines as an airline pilot. His HIMS/Special Issuance status continued to follow him, and his employment at American was closely tied to his compliance with medical and program requirements.

**ANSWER:**

Defendant admits that Plaintiff began his employment with American Airlines as an airline pilot in 2019. Defendant further admits that Plaintiff's employment as a pilot required maintenance of and compliance with the FAA's requirements concerning pilot licensing and qualifications. Defendant denies the remaining allegations and characterizations in Paragraph 39 of the First Amended Complaint.

**COMPLAINT ¶40:**

Plaintiff's bid base at American was DCA when he began. He later had a short-term assignment at PHL, during which his management contacts were primarily Captains Airey and Wooley, before returning to DCA as his base, where his primary management contact was Captain Firmin.

**ANSWER:**

Defendant admits that at certain times, Plaintiff was based at PHL and also at DCA. Defendant denies all remaining allegations in Paragraph 40 of the First Amended Complaint.

**COMPLAINT ¶41:**

In or around November 2023, Plaintiff elected to exit the internal "American Airlines HIMS program" and comply directly with his FAA-issued Special Issuance. The updated SI

confirmed his ongoing fitness to fly and continued medical oversight. The SI required Plaintiff to attend monthly meetings with a chief pilot or flight operations supervisor.

**ANSWER:**

Defendant admits that Plaintiff exited American's HIMS program. Defendant denies the

remaining allegations in Paragraph 41 of the First Amended Complaint.

**COMPLAINT ¶42:**

After this transition, American management—through Chief Pilots and Directors of Flight, including Captains Airey, Wooley, and Firmin—assumed responsibility for overseeing Plaintiff's SI compliance. Plaintiff was required to attend monthly in-person meetings with designated chief pilots.

**ANSWER:**

Defendant admits that American worked to ensure that Plaintiff was complying with his

SI, and that he was required to attend in-person meetings with certain chief pilots. Defendant

denies the remaining allegations in Paragraph 42 of the First Amended Complaint.

**COMPLAINT ¶43:**

Captain Airey imposed a rigid requirement that Plaintiff's monthly SI meetings take place in PHL, during the second week of each month, effectively offering no meaningful flexibility for rescheduling, even though Plaintiff was based at DCA and the SI itself simply required a monthly meeting with a chief pilot.

**ANSWER:**

Defendant denies the allegations in Paragraph 43 of the First Amended Complaint.

**COMPLAINT ¶44:**

Plaintiff made every reasonable effort to comply, including using personal time and jumpseat travel to attend meetings in PHL. He was not informed at the time that he was eligible for positive-space travel for such meetings.

**ANSWER:**

Defendant denies the allegations in Paragraph 44 of the First Amended Complaint.

14

**COMPLAINT ¶45:**

On multiple occasions while on scheduled flight duty with multi-hour layovers in PHL, Plaintiff stopped by the chief-pilot office to greet Captains Airey or Wooley. During these visits, Plaintiff politely and respectfully asked—always with a professional demeanor—whether they might prefer to conduct that month's meeting at that time in order to avoid later scheduling conflicts. Each time, his offer was declined, and Plaintiff accepted the decision without issue.

**ANSWER:**

Defendant denies the allegations in Paragraph 45 of the First Amended Complaint.

**COMPLAINT ¶46:**

Despite this, those encounters were later referenced in communications to Plaintiff's HIMS AME and appeared in his FAA file in a distorted manner, as if Plaintiff had been trying to circumvent or alter the terms of his monitoring, which was not the case.

**ANSWER:**

Defendant denies the allegations in Paragraph 46 of the First Amended Complaint.

**COMPLAINT ¶47:**

In April 2024, Plaintiff was unable to attend the assigned monthly meeting on a Friday in PHL due to last-minute jumpseat unavailability. Plaintiff did not refuse to attend the meeting and did not miss it for lack of effort; he was physically unable to travel to PHL because the seat he had planned to use became unavailable.

**ANSWER:**

Defendant denies the allegations in Paragraph 47 of the First Amended Complaint.

**COMPLAINT ¶48:**

In an effort to resolve the issue in good faith, Plaintiff voluntarily traveled to PHL on his personal day off the following Monday, at his own expense, and met briefly with Captain Airey. During that approximately ten-minute meeting, Plaintiff explained that nearly two weeks remained in the month and asked whether the meeting could be accepted to satisfy his monthly SI requirement.

**ANSWER:**

Defendant denies the allegations in Paragraph 48 of the First Amended Complaint.

15

**COMPLAINT ¶49:**

Captain Airey refused to count the meeting for SI compliance and told Plaintiff that a non-compliance report had already been submitted to Plaintiff's HIMS AME. Airey stated, "It's already been done," and added, "Do not confuse my kindness with weakness," which Plaintiff reasonably perceived as a threat.

**ANSWER:**

Defendant admits that a non-compliance report was submitted to Plaintiff's HIMS AME.

Defendant denies all remaining allegations contained in Paragraph 49 of the First Amended

Complaint.

**COMPLAINT ¶50:**

Plaintiff later obtained a copy of the non-compliance report, which spanned over a page and a half and, in his view, grossly mischaracterized the circumstances surrounding the April 2024 meeting incident.

**ANSWER:**

Defendant denies the allegations in Paragraph 50 of the First Amended Complaint.

**COMPLAINT ¶51:**

Weeks after the incident, Plaintiff was informed via email that he had, in fact, been eligible for positive space travel for such meetings but had never been advised of this option at the time of the April meeting. This information confirmed that Plaintiff had not been at fault for missing the Friday meeting and that his effort to correct the situation by traveling to PHL on his day off had been reasonable and appropriate.

**ANSWER:**

Defendant denies the allegations in Paragraph 51 of the First Amended Complaint.

**COMPLAINT ¶52:**

Even after it became clear that Plaintiff should have been provided positive-space travel and that the non-compliance report was based on incomplete and misleading assumptions, Captain Airey made no effort to retract, amend, or correct the report or to notify Plaintiff's HIMS AME or the FAA that the April incident did not reflect a true failure to comply. As a result, Plaintiff understands that the misleading report remains in his FAA and HIMS records, unfairly suggesting he failed to comply with monitoring when he did not.

**ANSWER:**

Defendant denies the allegations in Paragraph 52 of the First Amended Complaint.

**COMPLAINT ¶53:**

Separately, in late 2024, Plaintiff experienced targeted scrutiny from Chief Pilot Keith Firmin, who contacted Plaintiff under the pretext of a "wellness check" concerning Plaintiff's use of sick days near holidays, despite Plaintiff having sufficient accrued sick time and no history of abusing sick leave.

**ANSWER:**

Defendant admits that Chief Pilot Keith Firmin looked into Plaintiff's use of sick days near holidays. Defendant denies all remaining allegations and characterizations in Paragraph 53 of the First Amended Complaint.

**COMPLAINT ¶54:**

This was the first time in Plaintiff's career that he had been contacted in this manner about ordinary sick-leave use. Plaintiff had used sick leave only when he was actually ill and in accordance with policies. There was no evidence of relapse, impairment, or misconduct. Plaintiff perceived this wellness check as retaliatory and driven by his disability history and protected activity rather than any legitimate safety concern.

**ANSWER:**

Defendant denies the allegations in Paragraph 54 of the First Amended Complaint.

**COMPLAINT ¶55:**

Around the same time, at a subsequent monthly meeting with Captain Airey, Airey appeared to anticipate the issue and attempted to justify Firmin's actions by telling Plaintiff it was "standard procedure" for management to receive a list of pilots flagged for sick-leave usage during holiday periods. Based on Plaintiff's nearly two decades of airline experience, he had never seen or heard of such a policy applied in this way and believed the concern about his sick leave had been singled out.

**ANSWER:**

Defendant denies the allegations in Paragraph 55 of the First Amended Complaint and specifically denies that it maintained or applied any policy in the manner alleged or that Plaintiff was "singled out."

**COMPLAINT ¶56:**

Following Firmin's wellness-check contact, American caused a PEH (Personnel Event History) entry to be placed in Plaintiff's employment file regarding sick days used near holidays. Before doing so, Captain Firmin told Plaintiff that such an entry would be logged and that Plaintiff would have the opportunity to submit a rebuttal.

**ANSWER:**

Defendant admits the allegations in Paragraph 56 of the First Amended Complaint.

**COMPLAINT ¶57:**

Plaintiff submitted a written response, objecting that the PEH entry was unjustified, inconsistent with policy, and appeared retaliatory—particularly in light of his EEOC activity and the fact that he had sufficient accrued sick time. No correction or meaningful response was ever provided. Plaintiff viewed the April 2024 meeting handling, the later "holiday sick" wellness check, and the PEH entry as punitive and part of a broader campaign to portray him as non-compliant or unstable.

**ANSWER:**

Defendant admits that Plaintiff contested the PEH entry. Defendant denies all remaining allegations and characterizations in Paragraph 57 of the Amended Complaint.

**COMPLAINT ¶58:**

In or around the summer of 2021, while still under HIMS/Special Issuance requirements and while American and AMAS were fully aware of his disability history and program participation, Plaintiff applied to become a Federal Flight Deck Officer ("FFDO").

**ANSWER:**

Upon information and belief, Defendant admits that Plaintiff applied to become a Federal Flight Deck Officer. Defendant admits that Plaintiff participated in a HIMS program, and maintained a Special Issuance Medical Certificate. Defendant denies all remaining allegations in Paragraph 58 of the First Amended Complaint.

**COMPLAINT ¶59:**

Plaintiff was officially denied entry into the FFDO program on or about February 23, 2023.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 59 of the First Amended Complaint and they are, therefore, denied.

**COMPLAINT ¶60:**

Before learning what had been said to TSA, Plaintiff sought to confirm his disciplinary history with American. Chief Pilot Timothy Airey, who at the time was a senior management pilot and the supervisor of Chief Pilot Keith Firmin, reviewed Plaintiff's record and confirmed to Plaintiff, including in writing, that Plaintiff had not been disciplined in the manner later described to TSA.

**ANSWER:**

Defendant denies the allegations in Paragraph 60 of the First Amended Complaint.

**COMPLAINT ¶61:**

On February 15, 2024, Plaintiff submitted a Freedom of Information Act ("FOIA") request relating to the FFDO decision and received responsive records that same day.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 61 of the First Amended Complaint.

**COMPLAINT ¶62:**

The FOIA records showed that then—Chief Pilot Captain Keith Firmin, acting on behalf of American, had made false statements about Plaintiff to the TSA, including stating that Plaintiff had been "disciplined" in ways suggesting he posed a risk or had engaged in misconduct.

**ANSWER:**

Defendant denies the allegations in Paragraph 62 of the First Amended Complaint.

**COMPLAINT ¶63:**

These statements were inconsistent with Plaintiff's actual record and with the confirmation he had received from Captain Airey that he had not been disciplined in that manner.

**ANSWER:**

Defendant denies the allegations in Paragraph 63 of the First Amended Complaint.

19

**COMPLAINT ¶64:**

When Plaintiff confronted Airey with the FOIA records and pointed out that Captain Firmin had misrepresented his disciplinary history to TSA, Airey responded, in substance, "I cannot speak for Keith," and took no steps to correct or withdraw the false statement, despite being Firmin's superior and knowing it was inaccurate.

**ANSWER:**

Defendant denies the allegations in Paragraph 64 of the First Amended Complaint.

**COMPLAINT ¶65:**

The FOIA records further reflected that Captain Firmin had disclosed confidential medical information about Plaintiff's substance-use-disorder history to TSA without Plaintiff's consent. Plaintiff alleges this disclosure was unnecessary for any legitimate safety purpose and unlawfully leveraged his disability history to block the FFDO opportunity.

**ANSWER:**

Defendant denies the allegations in Paragraph 65 of the First Amended Complaint.

**COMPLAINT ¶66:**

At the time these statements were made to TSA, Captain Firmin and American already knew about Plaintiff's disability and his HIMS/Special Issuance status, because of their roles and access to Plaintiff's history and records.

**ANSWER:**

Defendant denies the allegations in Paragraph 66 of the First Amended Complaint.

**COMPLAINT ¶67:**

The FOIA records indicated that Plaintiff's FFDO application was denied in substantial part based on these misrepresentations and disclosures by Captain Firmin acting on American's behalf, with no corrective action taken by Airey despite his knowledge of the falsity.

**ANSWER:**

Defendant denies the allegations in Paragraph 67 of the First Amended Complaint.

**COMPLAINT ¶68:**

These false statements injured Plaintiff's career, deprived him of a significant professional opportunity, and further stigmatized him based on his disability history and his protected activity, including efforts to seek fair treatment and question HIMS practices.

**ANSWER:**

Defendant denies the allegations in Paragraph 68 of the First Amended Complaint.

**COMPLAINT ¶69:**

While at American, Plaintiff remained entwined with a company-linked HIMS structure and was subjected to coordinated pressure from union representatives, company management, and HIMS-affiliated medical personnel.

**ANSWER:**

Defendant denies the allegations in Paragraph 69 of the First Amended Complaint.

**COMPLAINT ¶70:**

Plaintiff's objections to religious compulsion and to abusive practices were treated as defiance. His non-religious beliefs were not respected. Instead, he was told, in substance, that full compliance with AA and HIMS doctrine was required if he wanted to remain employed.

**ANSWER:**

No response is required as the statements in Paragraph 70 of the First Amended

Complaint relate to claims dismissed by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶71:**

At a critical juncture, Plaintiff was summoned to an intense "quad"-style meeting at or involving American. He was placed alone in a room with a large group that included union officials, company representatives, peers, and HIMS actors.

**ANSWER:**

Defendant denies the allegations in Paragraph 71 of the First Amended Complaint.

**COMPLAINT ¶72:**

During this meeting, Plaintiff was threatened with the loss of both his job and his medical certificate. A text message he had sent in frustration the night before—stating "you've fucked with the wrong pilot"—was used as a pretext to accuse him of threatening program volunteers and to justify escalating punitive actions.

**ANSWER:**

Defendant denies the allegations in Paragraph 72 of the First Amended Complaint.

21

**COMPLAINT ¶73:**

A HIMS physician threatened to withdraw sponsorship of Plaintiff's Special Issuance, and others suggested that the matter could be escalated to his employer with potentially career-ending consequences.

**ANSWER:**

Defendant denies the allegations in Paragraph 73 of the First Amended Complaint.

**COMPLAINT ¶74:**

Instead of addressing Plaintiff's legitimate concerns about coercion, religious compulsion, and lack of transparency, the meeting served to intimidate him and to reinforce the message that speaking up would result in retaliation.

**ANSWER:**

Defendant denies the allegations in Paragraph 74 of the First Amended Complaint.

**COMPLAINT ¶75:**

Plaintiff holds sincere non-religious beliefs and convictions that conflict with the religious aspects of AA and similar 12-step programs. He believes that his recovery should be based on evidence-based, secular approaches and that he should not be required to profess religious beliefs he does not hold as a condition of employment.

**ANSWER:**

No response is required as the statements in Paragraph 75 of the First Amended

Complaint relate to claims dismissed by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶76:**

Plaintiff repeatedly requested that his non-religious beliefs be respected and that non-religious alternatives be recognized as valid paths to recovery and monitoring. He also raised concerns about the abusive and opaque nature of HIMS-linked monitoring, including excessive company-level scrutiny, shifting requirements, and the use of religious language and expectations in what was presented as a medical program.

**ANSWER:**

No response is required as the statements in Paragraph 76 of the First Amended

Complaint relate to claims dismissed by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶77:**

These objections and requests constitute protected activity under both the ADA (opposing disability discrimination and interference) and Title VII (opposing religious discrimination and coercion).

**ANSWER:**

No response is required as the statements in Paragraph 77 of the First Amended Complaint relate to claims dismissed by the Court on June 9, 2026. (ECF No. 40.)

**COMPLAINT ¶78:**

Plaintiff remained under FAA-imposed HIMS and Special Issuance monitoring for years, like other pilots in similar circumstances. What distinguished his experience was how American and its agents chose to handle that monitoring—through unnecessarily rigid, stressful meetings, the April 2024 PHL incident, the "holiday sick" wellness check, the PEH entry in his file, threats, and a refusal to acknowledge his long-term stability.

**ANSWER:**

Defendant denies the allegations in Paragraph 78 of the First Amended Complaint.

**COMPLAINT ¶79:**

Faced with ongoing threats and a lack of a reasonable path toward normalcy at the company level, Plaintiff took steps to escalate his concerns outside the American/AMAS framework. He was not attempting to avoid FAA safety requirements; he was seeking relief from the abusive way those requirements were being used against him by American and its agents.

**ANSWER:**

Defendant denies the allegations in Paragraph 79 of the First Amended Complaint.

**COMPLAINT ¶80:**

Plaintiff ultimately succeeded in reaching a senior FAA medical official (the Deputy Federal Air Surgeon), who reviewed Plaintiff's situation and recognized that aspects of how Plaintiff's monitoring had been handled were inconsistent with what was medically necessary and appropriate.

**ANSWER:**

Defendant denies the allegations in Paragraph 80 of the First Amended Complaint.

23

**COMPLAINT ¶81:**

Within a relatively short time after Plaintiff raised his concerns directly with FAA leadership, the FAA authorized Plaintiff's advancement into a more reasonable and defined phase of oversight (often referred to as "advanced monitoring"), with the expectation that, absent new incidents, he would be granted an unrestricted first-class medical certificate within the normal FAA timetable.

**ANSWER:**

Defendant denies the allegations in Paragraph 81 of the First Amended Complaint.

**COMPLAINT ¶82:**

Throughout this period, Plaintiff has continued to meet all objective sobriety and performance standards. The obstacles he has faced have been rooted not in safety concerns, but in retaliation, stigma, religious coercion, and the misuse of medical oversight mechanisms by American and its agents, including the individual Defendants.

**ANSWER:**

Defendant denies the allegations in Paragraph 82 of the First Amended Complaint.

**COMPLAINT ¶83:**

In January 2025, the FAA issued an updated Special Issuance for Plaintiff that explicitly removed the requirement that he meet monthly with a chief pilot. The updated SI confirmed that Plaintiff remained medically qualified to fly and no longer required chief-pilot meetings as a condition of his certification.

**ANSWER:**

Defendant admits that the FAA issued an SI for Plaintiff that did not require him to meet

with monthly with a chief pilot. Defendant denies the remaining allegations in Paragraph 83 of

the First Amended Complaint.

**COMPLAINT ¶84:**

Plaintiff informed American of the change and, through his union-appointed attorney, provided verification of his valid medical and pilot certificates using procedures outlined in American's own flight operations manual. American nonetheless refused to accept this official verification.

**ANSWER:**

Defendant denies the allegations in Paragraph 84 of the First Amended Complaint.

**COMPLAINT ¶85:**

Plaintiff then obtained a letter from the FAA official who had personally signed his updated SI, confirming in writing that Plaintiff's medical certificate remained valid, that he was in good standing, and that his SI no longer required monthly chief-pilot meetings. American refused to accept this documentation as well.

**ANSWER:**

Defendant admits that Plaintiff produced an unsigned letter or memorandum on FAA letterhead. Defendant denies all remaining allegations and characterizations in Paragraph 85 of the First Amended Complaint.

**COMPLAINT ¶86:**

Instead, American took the position—communicated through company channels and Plaintiff's union attorney—that Plaintiff would be placed on unpaid leave unless he physically produced and displayed his Special Issuance documentation to a chief-pilot office, even though doing so would further invade his medical privacy and was not required for safety.

**ANSWER:**

Defendant denies the allegations in Paragraph 86 of the First Amended Complaint.

**COMPLAINT ¶87:**

Plaintiff repeatedly stated that maintaining his medical privacy was important to him and that forcing him to show the SI in this manner violated his rights. Under continued threat of unpaid leave and loss of income, Plaintiff was ultimately forced to comply and present his SI to satisfy American, despite already having provided FAA-verified proof of his qualifications.

**ANSWER:**

Defendant denies the allegations in Paragraph 87 of the First Amended Complaint.

**COMPLAINT ¶88:**

Plaintiff alleges that American's conduct—refusing to accept official FAA verification, threatening unpaid leave, and coercing the physical display of his SI—constituted interference with his ADA rights and an unnecessary and punitive invasion of his medical privacy, as well as further evidence of retaliation and hostility.

**ANSWER:**

Defendant denies the allegations in Paragraph 88 of the First Amended Complaint.

**COMPLAINT ¶89:**

On or about September 19, 2025, after this lawsuit had been filed and while Plaintiff's discrimination and retaliation complaints were pending, Plaintiff operated Flight 1944 from DCA to TPA. During that trip, there was a discussion with Captain Sam Omair, a management pilot in the DCA chief-pilot office, regarding an aircraft swap after the original aircraft went out of service for maintenance.

**ANSWER:**

Defendant denies the allegations in Paragraph 89 of the First Amended Complaint.

**COMPLAINT ¶90:**

In their brief conversation at DCA, Captain Omair conveyed that there was a concern or suggestion that Plaintiff had refused to swap into a substitute aircraft. Plaintiff understood that such an allegation, if left uncorrected, could be used to portray him as uncooperative or insubordinate.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff

"understood." Defendant denies all remaining allegations in Paragraph 90 of the First Amended

Complaint.

**COMPLAINT ¶91:**

That same day, Plaintiff sent a follow-up email to Captain Omair, with union representatives copied, titled "Clarification re: DCA—TPA Aircraft Swap Discussion on September 19, 2025." In that email, Plaintiff documented the sequence of events: the original aircraft went down for maintenance; a substitute aircraft inbound from Canada was assigned; maintenance then advised that the original aircraft was being signed off; Plaintiff contacted dispatch and suggested remaining with the original aircraft for expediency until dispatch confirmed the plan; the crew remained with the original aircraft until instructed otherwise; and, once the substitute aircraft was ready, Plaintiff and his crew promptly reported, waited for required security procedures, and departed with no delay attributable to Plaintiff or his crew.

**ANSWER:**

Defendant admits that Plaintiff sent an email to Captain Omair on September 19, 2025,

and states that the email speaks for itself. The remaining allegations in Paragraph 91 of the First

Amended Complaint are denied.

**COMPLAINT ¶92:**

In the email, Plaintiff expressly stated that at no point did he refuse to operate the aircraft assigned, that his intent was only to coordinate with dispatch to ensure the quickest possible departure, and that both the gate agent and dispatch had confirmed there was no miscommunication from him. Plaintiff also stated that he was unclear where the suggestion that he had refused to swap had originated.

**ANSWER:**

Defendant admits that Plaintiff sent an email to Captain Omair on September 19, 2025,

and states that the email speaks for itself. The remaining allegations in Paragraph 91 of the First

Amended Complaint are denied.

**COMPLAINT ¶93:**

Plaintiff believes that raising such a baseless "refusal to swap" concern, and requiring him to defend his conduct in writing, was part of the continuing pattern of heightened scrutiny and efforts to generate negative narratives about him in retaliation for his protected activity and this lawsuit.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of

what Plaintiff "believes."  The remaining allegations in Paragraph 93 of the First Amended

Complaint are denied.

**COMPLAINT ¶94:**

As a direct result of the conduct described above—including the distorted reporting to the FAA and HIMS, the threats to his medical certificate and employment, the unjustified PEH entry, the FFDO denial, the forced disclosure of his SI under threat of unpaid leave, and ongoing retaliatory scrutiny—Plaintiff has suffered significant emotional harm.

**ANSWER:**

Defendant denies the allegations in Paragraph 96 of the First Amended Complaint.

**COMPLAINT ¶95:**

Plaintiff has experienced persistent anxiety, sleepless nights, and constant worrying about whether he would lose his job and his career as an airline pilot, and about how the loss of his livelihood would affect his ability to provide for his family and his future.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 95 of the First Amended Complaint.

**COMPLAINT ¶96:**

Plaintiff has felt humiliated, stigmatized, and constantly on edge, fearful that normal conduct will be mischaracterized and used against him because of his disability history, his non-religious beliefs, and his efforts to assert his rights.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 96 of the First Amended Complaint.

VI.    **CLAIMS FOR RELIEF**

**COUNT I - DISABILITY DISCRIMINATION (ADA)**

(Against American Airlines, Inc.)

**COMPLAINT ¶97:**

Plaintiff incorporates by reference paragraphs 1-96 as though fully set forth herein.

**ANSWER:**

Defendant restates and incorporates its responses in Paragraphs 1–96.

**COMPLAINT ¶98:**

Plaintiff is an individual with a disability within the meaning of the ADA, including a record of impairment and being regarded as having such an impairment.

**ANSWER:**

The statements in Paragraph 98 constitute a legal conclusion to which no response is

required. To the extent a response is required, Defendant denies the allegations in Paragraph 98

of the First Amended Complaint.

28

**COMPLAINT ¶99:**

Plaintiff has at all relevant times been qualified to perform the essential functions of his position as an airline captain, with or without reasonable accommodation.

**ANSWER:**

The statements in Paragraph 99 constitute a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 99 of the First Amended Complaint.

**COMPLAINT ¶100:**

American, acting through its agents and decision-makers, subjected Plaintiff to adverse actions and materially adverse terms and conditions of employment because of his disability and/or his record of impairment, including but not limited to: using his HIMS/Special Issuance status as a basis to impose unnecessarily rigid and punitive company-level conditions; treating ordinary scheduling and sick-leave issues as misconduct; influencing his FFDO denial through misrepresentations and disclosure of confidential medical information; and perpetuating stigma and mistrust of his disability status.

**ANSWER:**

Defendant denies the allegations in Paragraph 100 of the First Amended Complaint.

**COMPLAINT ¶101:**

American treated Plaintiff less favorably than similarly situated individuals who were not disabled or not regarded as disabled.

**ANSWER:**

Defendant denies the allegations in Paragraph 101 of the First Amended Complaint.

**COMPLAINT ¶102:**

American's conduct violated the ADA's prohibition on discrimination "because of disability.

**ANSWER:**

Defendant denies the allegations in Paragraph 102 of the First Amended Complaint.

29

**COMPLAINT ¶103:**

As a direct and proximate result of these violations, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, loss of professional opportunities, and other non-wage damages, including anxiety, sleeplessness, and ongoing worry about the loss of his career and ability to provide for his family.

**ANSWER:**

Defendant denies the allegations in Paragraph 103 of the First Amended Complaint.

## COUNT II - FAILURE TO ACCOMMODATE / INTERFERENCE (ADA)

(Against American Airlines, Inc.)

**COMPLAINT ¶104:**

Plaintiff incorporates by reference paragraphs 1-103.

**ANSWER:**

Defendant restates and incorporates its responses in Paragraphs 1–103.

**COMPLAINT ¶105:**

Plaintiff requested, and was entitled to, reasonable accommodations related to his disability and his long-term recovery, including clear, predictable, and reasonable handling of FAA monitoring requirements and respect for his non-religious recovery preferences and medical privacy.

**ANSWER:**

Defendant denies the allegations in Paragraph 105 of the First Amended Complaint.

**COMPLAINT ¶106:**

American failed to provide reasonable accommodations and, instead of working with Plaintiff to implement FAA monitoring requirements in a fair and predictable way, maintained unnecessarily rigid and threatening company-level conditions around those requirements, despite Plaintiff's documented and sustained sobriety.

**ANSWER:**

Defendant denies the allegations in Paragraph 106 of the First Amended Complaint.

**COMPLAINT ¶107:**

American also interfered with Plaintiff's exercise and enjoyment of his ADA rights by, among other things: using his HIMS/Special Issuance status and AMAS-coordinated program participation to coerce compliance with AA; demanding that he disclose and physically present his SI documentation under threat of unpaid leave even after receiving official FAA verification; and disregarding his objections to unnecessary invasions of medical privacy.

**ANSWER:**

Defendant denies the allegations in Paragraph 107 of the First Amended Complaint.

**COMPLAINT ¶108:**

This conduct violated the ADA's reasonable accommodation and interference provisions.

**ANSWER:**

Defendant denies the allegations in Paragraph 108 of the First Amended Complaint.

**COMPLAINT ¶109:**

As a direct and proximate result, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, and loss of professional opportunities.

**ANSWER:**

Defendant denies the allegations in Paragraph 109 of the First Amended Complaint.

## COUNT III - RETALIATION (ADA)

(Against American Airlines, Inc.)

**COMPLAINT ¶110:**

Plaintiff incorporates by reference paragraphs 1-109.

**ANSWER:**

Defendant restates and incorporates its responses in Paragraphs 1–109.

**COMPLAINT ¶111:**

Plaintiff engaged in protected activity under the ADA by, among other things, raising concerns about discriminatory and abusive treatment; objecting to excessive and inflexible company-level monitoring (including the April 2024 PHL incident and the "holiday sick" wellness check); asserting his right to medical privacy in connection with the SI; and filing EEOC charges and this lawsuit.

31

**ANSWER:**

The statements in Paragraph 111 contain legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

**COMPLAINT ¶112:**

In response, American retaliated against Plaintiff by intensifying scrutiny; threatening to withdraw support for his medical status; contributing to the denial of his FFDO application through misrepresentations and improper disclosure of medical information; treating a scheduling issue as a serious non-compliance event and refusing to correct a misleading HIMS report even after learning he should have been provided positive space; initiating a "holiday sick" wellness check and PEH entry instead of reasonably addressing his use of sick leave; coercing him to physically display his SI under threat of unpaid leave; and, more recently, by raising a baseless suggestion on September 19, 2025 that Plaintiff had refused to swap aircraft on Flight 1944 and requiring him to defend his conduct in writing as described in paragraphs 89-93.

**ANSWER:**

Defendant denies the allegations in Paragraph 112 of the First Amended Complaint.

**COMPLAINT ¶113:**

American's retaliatory actions would dissuade a reasonable employee from engaging in protected activity.

**ANSWER:**

Defendant denies the allegations in Paragraph 113 of the First Amended Complaint.

**COMPLAINT ¶114:**

As a direct and proximate result of American's retaliation, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, and loss of professional opportunities, including anxiety, sleep disturbance, and fear for his career and family's financial security.

**ANSWER:**

Defendant denies the allegations in Paragraph 114 of the First Amended Complaint.

**COUNT IV - RELIGIOUS DISCRIMINATION (TITLE VII)**

(Against American Airlines, Inc.)

**COMPLAINT ¶115:**

Plaintiff incorporates by reference paragraphs 1-114.

32

**ANSWER:**

No response is required as the allegations in Paragraph 115 concern Plaintiff's Title VII

religious discrimination claim, which was dismissed in its entirety by the Court on June 9, 2026

(ECF No. 40).

**COMPLAINT ¶116:**

Plaintiff holds sincere non-religious beliefs that conflict with the religious doctrines and
practices of AA and similar 12-step programs.

**ANSWER:**

No response is required as the allegations in Paragraph 116 concern Plaintiff's Title VII

religious discrimination claim, which was dismissed in its entirety by the Court on June 9, 2026

(ECF No. 40).

**COMPLAINT ¶117:**

American, acting through AMAS and its own managers and agents, required Plaintiff to
participate in AA and to embrace AA's religious language and framework as a condition of
maintaining his job and his medical certification.

**ANSWER:**

No response is required as the allegations in Paragraph 117 concern Plaintiff's Title VII

religious discrimination claim, which was dismissed in its entirety by the Court on June 9, 2026

(ECF No. 40).

**COMPLAINT ¶118:**

When Plaintiff resisted religious coercion and requested respect for his non-religious
beliefs and for secular recovery alternatives, American treated him as non-compliant, prolonged
and intensified company-level burdens, and threatened his employment and medical status.

**ANSWER:**

No response is required as the allegations in Paragraph 118 concern Plaintiff's Title VII

religious discrimination claim, which was dismissed in its entirety by the Court on June 9, 2026

(ECF No. 40).

**COMPLAINT ¶119:**

American's conduct constitutes discrimination based on religion (including non-belief) in violation of Title VII.

**ANSWER:**

No response is required as the allegations in Paragraph 119 concern Plaintiff's Title VII religious discrimination claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶120:**

As a direct and proximate result, Plaintiff has sustained emotional distress, reputational harm, and loss of professional opportunities.

**ANSWER:**

No response is required as the allegations in Paragraph 120 concern Plaintiff's Title VII religious discrimination claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

## COUNT V — RETALIATION (TITLE VII)

(Against American Airlines, Inc.)

**COMPLAINT ¶121:**

Plaintiff incorporates by reference paragraphs 1-120.

**ANSWER:**

No response is required as the allegations in Paragraph 121 concern Plaintiff's Title VII retaliation claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶122:**

Plaintiff engaged in protected activity under Title VII by opposing religious discrimination and coercion, including objecting to mandatory participation in AA and to the requirement that he profess religious beliefs he does not hold.

34

**ANSWER:**

No response is required as the allegations in Paragraph 122 concern Plaintiff's Title VII retaliation claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶123:**

In response, American retaliated against Plaintiff by extending and intensifying company-level burdens around his monitoring; threatening his job and medical certificate; contributing to adverse decisions such as the FFDO denial; and engaging in ongoing heightened scrutiny, including the April 2024 PHL handling, the "holiday sick" wellness check and PEH entry, the coercive SI disclosure demands, and the September 19,2025 DCA—TPA aircraft-swap incident described in paragraphs 89-93.

**ANSWER:**

No response is required as the allegations in Paragraph 123 concern Plaintiff's Title VII retaliation claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶124:**

American's retaliatory actions would dissuade a reasonable employee from engaging in protected activity.

**ANSWER:**

No response is required as the allegations in Paragraph 124 concern Plaintiff's Title VII retaliation claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶125:**

As a direct and proximate result of this retaliation, Plaintiff has suffered and continues to suffer emotional distress, reputational harm, and loss of professional opportunities.

**ANSWER:**

No response is required as the allegations in Paragraph 125 concern Plaintiff's Title VII retaliation claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

## COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Indiana Common Law — Against All Defendants)

### COMPLAINT ¶126:

Plaintiff incorporates by reference paragraphs 1-125.

### ANSWER:

No response is required as the allegations in Paragraph 126 concern Plaintiff's IIED

claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

### COMPLAINT ¶127:

Defendants American, Captain Airey, Captain Wooley, and Captain Firmin, acting individually and in concert, engaged in extreme and outrageous conduct toward Plaintiff, including but not limited to:

a.  Coercing Plaintiff into participation in AA, a religious program, under threat of loss of his career and medical certificate;

b.  Using Plaintiff's disability and HIMS/Special Issuance status as leverage to control his speech, beliefs, and objections;

c.  Imposing rigid and burdensome monthly-meeting requirements in PHL, then mischaracterizing an April 2024 scheduling issue as serious non-compliance, generating a long and misleading report, refusing to correct that report even after learning Plaintiff should have been provided positive space, and later subjecting Plaintiff to a "holiday sick" wellness check and PEH entry;

d.  Orchestrating and participating in a high-pressure "quad" meeting where Plaintiff was surrounded, threatened with loss of his job and medical certificate, and told that a frustrated text message meant he had "threatened" volunteers;

e.  Threatening to withdraw sponsorship of his medical certificate as a means of silencing his objections;

f.  In the case of Captain Firmin, making false and damaging statements to TSA about Plaintiff being "disciplined" and disclosing confidential medical information, contributing to the denial of Plaintiff's FFDO application, even after confirmation from Airey that no such discipline had occurred;

g.  Refusing to accept official FAA verification of Plaintiff's updated SI, threatening unpaid leave, and coercing Plaintiff to physically present his SI documentation despite his objections and the lack of any safety justification; and

     h.     Raising a baseless suggestion that Plaintiff had refused to swap aircraft on September 19, 2025, after he engaged in protected activity and filed this lawsuit, and requiring him to defend his conduct in writing to a management pilot.

**ANSWER:**

No response is required as the allegations in Paragraph 127 concern Plaintiff's IIED

claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶128:**

This pattern of conduct was beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community, particularly given the power imbalance between Defendants (who controlled Plaintiff's livelihood and ability to fly) and Plaintiff.

**ANSWER:**

No response is required as the allegations in Paragraph 128 concern Plaintiff's IIED

claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶129:**

Defendants engaged in this conduct intentionally or with reckless disregard of the high probability that it would cause severe emotional distress to Plaintiff

**ANSWER:**

No response is required as the allegations in Paragraph 129 concern Plaintiff's IIED

claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

**COMPLAINT ¶130:**

As a direct and proximate result of Defendants' extreme and outrageous conduct,

Plaintiff has suffered severe emotional distress, including anxiety, humiliation, sleep disturbance, persistent worry about losing his career and being unable to support his family, and other symptoms that have affected his daily life and well-being, along with reputational harm and loss of professional opportunities.

**ANSWER:**

No response is required as the allegations in Paragraph 130 concern Plaintiff's IIED

claim, which was dismissed in its entirety by the Court on June 9, 2026 (ECF No. 40).

## VII.    DEMAND FOR JURY TRIAL

### COMPLAINT ¶131:

Plaintiff demands a trial by jury on all issues so triable.

### ANSWER:

Defendant admits that Plaintiff purports to demand a trial by jury but denies that Plaintiff

is entitled to a trial by jury for Count III as retaliation claims under the Americans with

Disabilities Act do not provide for a jury trial under the binding precedent of *Kramer v. Banc of*

*Am. Sec., LLC*, 355 F.3d 961, 966 (7th Cir. 2004).

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Captain Maurice MacEwen respectfully requests that the Court
enter judgment in his favor and against Defendants, and award the following relief:

a.    As to American Airlines, Inc., a declaration that its conduct described herein violated the ADA and Title VII;

b.    Injunctive relief requiring American to cease disability-based and religious discrimination and retaliation, to cease using religiously based programs (such as AA) as conditions of employment or medical sponsorship, and to implement policies and training to prevent such conduct in the future;

c.    Appropriate equitable relief to restore or correct Plaintiff's professional records and opportunities, including but not limited to removal of false disciplinary-type statements and PEH-related notations, and fair consideration for future opportunities without discriminatory or retaliatory input;

d.    As to all Defendants, compensatory damages for emotional distress, humiliation, loss of enjoyment of life, reputational harm, and loss of professional opportunities;

e.    As to all Defendants, punitive damages to the extent permitted by law;

f.    Pre- and post-judgment interest as allowed by law;

g.    The costs of this action, and reasonable attorneys' fees if Plaintiff retains counsel at a later stage; and

h.    Such other and further relief as the Court deems just and proper.

38

**ANSWER:**

The foregoing contains a Prayer for Relief, to which no response is required. To the extent a response is required, Defendant denies the allegations in the Prayer for Relief, and denies that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant asserts the following defenses without assuming any burdens of production or proof that, pursuant to law, belong to Plaintiff.

1. Plaintiff's claims, in whole or in part, fail to state a claim upon which relief can be granted as a matter of fact and law.

2. Plaintiff's claim for damages must be barred to the extent Plaintiff has failed to mitigate his damages.

3. To the extent Plaintiff has mitigated his damages, any award of damages that may be due to Plaintiff must be offset by such mitigation.

4. To the extent Plaintiff received other benefits and/or awards attributable to an injury for which he seeks compensation in this case, such benefits and/or awards should offset, in whole or in part, any award he receives here for the same injury.

5. To the extent that Plaintiff's claims rely on conduct outside the scope of his underlying charge of discrimination, his claims are barred in whole or in part.

6. To the extent Plaintiff failed to exhaust his administrative remedies and/or failed to comply with any procedural prerequisites prior to bringing his claims, his claims are barred in whole or in part.

7. Plaintiff's claims are barred in whole or in part because Defendant exercised reasonable care to prevent and promptly correct any discriminatory, harassing, or retaliatory

39

behavior and/or Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities.

8.     Defendant neither engaged in the alleged discrimination, retaliation, or harassment against Plaintiff, nor aided or abetted it, nor authorized, encouraged, condoned, ratified, acquiesced, tolerated, or approved any of the alleged discrimination against Plaintiff, and instead prohibited and continues to prohibit such acts, and any such conduct may not be attributed to Defendant through principles of agency, *respondeat superior*, or otherwise.

9.     Defendant's actions with respect to Plaintiff were taken without malice or reckless indifference, and were based on legitimate, good-faith business reasons without any discriminatory or improper motive.

10.     All or part of any punitive damages claims against Defendant are barred because Defendant has made good faith efforts to comply with all applicable laws.

11.     Plaintiff's causes of action are barred, in whole or in part, by the doctrine of unclean hands.

12.     To the extent that discovery or investigation reveal separate, consequential misconduct, then Defendant will rely upon that after-acquired evidence to limit Plaintiff's claim for damages.

13.     Plaintiff is not a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

14.     Plaintiff's remedies are limited and/or liability is precluded because Defendant would have taken the same action in the absence of the alleged impermissible motivating factor(s).

15.     Plaintiff's claims, in whole or in part, are barred by Plaintiff's failure to comply with Defendant's express or implied policies or procedures governing Plaintiff's employment.

16.     Plaintiff's First Amended Complaint, and each and every cause of action stated therein, may be barred in whole or in part by preemption and/or preclusion under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*

17.     Plaintiff's First Amended Complaint, and each and every cause of action stated therein, may be barred in whole or in part by preemption and/or preclusion under the Federal Aviation Act, 49 U.S.C. § 40101 *et seq.*

18.     Plaintiff's First Amended Complaint, and each and every cause of action stated therein, may be barred in whole or in part by preemption and/or preclusion under the Airline Deregulation Act, 49 U.S.C. § 41713 *et seq.*

19.     Plaintiff's claims are barred, in whole or in part, to the extent they rely on conduct or allegations occurring beyond the applicable statute of limitations period.

20.     Defendant presently has insufficient knowledge or information upon which to form a belief as to whether there may be additional, as yet unstated, defenses, and reserves the right to assert additional separate defenses in the event that discovery indicates that such defenses are appropriate.

21.     Any allegation not denied in any response to any specific Complaint allegation is considered denied.

## **PRAYER**

WHEREFORE, Defendant American Airlines, Inc., seeks judgment against Plaintiff Maurice MacEwen and prays that the Court enters an order:

1.     Denying all relief sought by Plaintiff Maurice MacEwen and dismissing the Complaint in its entirety, with prejudice;

41

2.    Entering judgment in favor of Defendant American Airlines, Inc.;

3.    Awarding Defendant American Airlines, Inc. its costs of suit incurred in defense of this action to the maximum extent permitted by law; and

4.    Granting Defendant American Airlines, Inc. any such other and further relief as this Honorable Court deems just and proper.


DATED: June 30, 2026                          Respectfully submitted,

                                              AMERICAN AIRLINES, INC.


                                              By: */s/ Ada W. Dolph*
                                                    One of Its Attorneys

Ada W. Dolph
adolph@seyfarth.com
Taylor C. Iaculla
tiaculla@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606-6448
Telephone:   (312) 460-5000
Facsimile:    (312) 460-7000

*Attorneys for Defendant*
*American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2026, a true and correct copy of the foregoing

DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFF'S FIRST AMENDED

COMPLAINT has been electronically filed with the Clerk of the Court using the CM/ECF

system, and sent by electronic mail to *pro se* Plaintiff Maurice MacEwen via the following:

> Maurice MacEwen
> Email:  mauricemac7@hotmail.com

/s/ Ada W. Dolph
Ada W. Dolph

43

326846595v.4